CRAWLEY, Judge.
This is a boundary line dispute filed in December 1993 by Mrs. Clara Mae Harvey against Billy Hall and his wife, Lorraine Hall.
Following an ore tenus proceeding, the trial court entered a judgment for Mrs. Harvey. The Halls appealed, raising the sole issue of sufficiency of the evidence to support the judgment. We affirm.
Mrs. Harvey testified to the location of the disputed parcel by reference to “a real rough sketch here on the board” drawn by her attorney. That sketch is not in the record. When Mrs. Harvey and her husband purchased their land in 1981, an old fence existed between their property and the property purchased by the Halls in 1988. Mrs. Harvey’s husband and daughter pulled the fence down in 1985, so that her husband could cross over to what later became the Halls’ property to help the owners, then the Campbell family, with a garden. At that time, the Campbells and the Harveys recognized the location of the fence as the property line between their properties.
After the Halls purchased their parcel, Mrs. Harvey gave the Halls permission to take down her fence to allow a mobile home to be towed across her property onto the Halls’ property.
This dispute arose after the Halls erected a fence that cut off a road to Mrs. Harvey’s barn and prevented her from putting hay in the barn. Later, the Halls constructed a road and a new fence on land claimed by Mrs. Harvey. The construction of the new fence, which was directly above Mrs. Harvey’s water line, caused Mrs. Harvey’s water line to be cut in several places. She had to relocate her water line.
Mrs. Harvey identified four small photographs of her garage, a shed, the new fence, and a mobile home on the other side of the new fence. However, the points on the photographs referred to are not sufficiently identified to aid this court in interpreting her *4 testimony about the location of the new fence.
Mrs. Harvey remembered when the boundary line was surveyed around 1967 or 1968 and when the old fence was erected after the survey. She considered the old fence to be on the property line.
Mrs. Harvey had her property surveyed in 1991; the surveyor placed four fence posts and told her these posts were along the dividing line. He told Mr. Hall that the fence post he erected near Mrs. Harvey’s garage was at the corner of the Halls’ property. Mrs. Harvey did not accept this line because the survey did not extend to the end of her property or to the point where the old fence was located.
Mrs. Harvey’s daughter, Mrs. Louise Murray Myers, testified that the old fence was there when her parents purchased the property and that she was present and assisted when her father took down the old fence. She said the fence was taken down so that her father could help the Campbells with their garden. She was told by the Camp-bells that the fence was located according to the survey they had done.
Mr. Ben Engle testified that he had owned his property for 30 to 35 years and had built a house on it in 1968. His property apparently adjoined Mrs. Harvey’s property and the Halls’ property. He had never heard anyone dispute the location of the property line. He said that since he had purchased his property, the coterminous owners had claimed up to the old fence line. He also referred to the “very rough sketch” in describing his line and fence.
Mr. Engle’s wife, Eva Engle, gave similar testimony. She also referred to the rough sketch and said the new fence was not located where she thought the property line was.
Mrs. Hazel Mischer was a neighbor of the Halls and Harveys. Her testimony was similar to Mr. and Mrs. Engle’s. In addition, she said that the Campbells (the Halls’ predecessor in title) had acknowledged the old fence as the property line. She stated that the location of the old fence between Mrs. Harvey’s land and the Halls’ ran in a straight line with the location of the fence between Mrs. Harvey’s land and the Engles’ land.
Mrs. Alice Woody is Mrs. Harvey’s mother. Her testimony was similar to that of Mrs. Harvey, Mr. and Mrs. Engle, and Mrs. Mischer.
Mr. Batchelor was hired by Mrs. Harvey in 1991 to survey the line between her property and the Halls’ property. He referred to his survey, which had no references to the owners of these two parcels or the owners of surrounding parcels, to the old fence, the new fence, the garage, or the fence along the Engles’ property, etc. He also used the rough sketch in answering questions. He said he surveyed according to the description in the deed, and he admitted that it was not his job to prove a property line. He stated, “We take the deeds and put that property line in where it calls for and then anything else is up to the court.”
Mr. Hall testified that he erected the new fence according to the surveyor’s markings about a year and a half after the survey was done. Again, most of his testimony refers to the rough sketch. He said there was no old fence between his property and Mrs. Harvey’s when he purchased his property. He said he did not know whether the new fence was on the property line.
The trial court found the old fence to be the boundary line between the land owned by Mrs. Harvey and that owned by the Halls. “Recently, in Todd v. Owens, 592 So.2d 534, 535 (Ala.1991), [the Alabama Supreme] Court set out the well established law applicable to the present case:
“ ‘ “ ‘[A] judgment establishing a boundary line between coterminous landowners on evidence submitted ore tenus is presumed to be correct and need only be supported by credible evidence. If so supported, the trial court’s conclusions will not be disturbed on appeal unless plainly erroneous or manifestly unjust.’ Tidwell v. Strickler, 457 So.2d 365, 367 (Ala.1984) (citations omitted.)” ’
‘“Garringer v. Wingard, 585 So.2d 898, 899 (Ala.1991). The presumption of correctness is especially strong in boundary *5 line dispute cases because it is difficult for the appellate court to review the evidence in such cases. Bearden v. Ellison, 560 So.2d 1042 (Ala.1990).’ ”
Econoline Trailers, Inc. v. Blake, 600 So.2d 993, 993-94 (Ala.1992).
As discussed above, the witnesses frequently referred to the rough sketch. The following is a typical example:
“Q Now, Clara, I’ve drawn a real rough sketch here on the board, and let me orient you just a minute if I might. Now, this is your property right here?
“A Right.
“Q Okay. And this is the Hall property?
“A Yes, it is.
“Q And this is the Engle property, right?
“A Right.
“Q Mr. Engle’s house is right here, the Halls’ house is here, your barn is right here?
“A Right. Garage.
“Q Garage, excuse me.
“A The barn is down in the—
“Q And your house is right here; is that right? Is that roughly the way the land lays?
“A That’s the way it lays.
“Q And the line we’ve got in dispute is this line right here; is that correct?
“A That’s correct.”
The trial court, looking at the points referred to in the rough sketch and the pictures, could understand such testimony. Without the aid of such visual connection between the witnesses’ statements and the exhibit, this court cannot say the judgment of the trial court was erroneous.
The trial court had credible evidence before it upon which to base its finding that the old fence, rather than the line established from the description in the deeds, was the boundary line.
This case was transferred to this court by the Supreme Court pursuant to Ala.Code 1975, § 12-2-7.
The judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, YATES, and MONROE, JJ., concur.