THOMPSON, Judge.
This is an appeal from a judgment of the Circuit Court of Blount County determining a boundary line between coterminous landowners. We affirm.
David Fallin and Teresa Fallin, a married couple, purchased approximately 61 acres of land on June 16, 1995. The Fal-lins had a boundary survey performed by R.C. Burgett (“the Burgett survey”) in connection with the purchase of the property. The adjoining landowners, Alvin J. Cornelius and his wife Mary Sue, own a parcel containing approximately 254 acres. The Corneliuses are both retired and do not reside on the property. A dispute arose over the boundaries between the two parcels when the Fallins attempted to erect a fence around their property.
Subsequently, the Corneliuses retained Frank Hollis to conduct a survey of their property (“the Hollis survey”). Thereafter the Corneliuses filed a complaint against the ■ Fallins, requesting the trial court to determine the true and correct boundary line between the parties’ property. Following ore tenus proceedings and his inspection of the subject property, Judge Robert Austin entered a final judgment containing the following eloquent rendition of the facts:
“Gather around as the tale of two families who are adjoining landowners is related. The Corneliuses, owners of 254 acres and the Fallins, owners of 61 acres, have fallen into controversy and strife over two strips of land. Despite all of the land which each possessed, neither family was able to bear the loss to the other of even the smallest parcel of their domain.
*410 “Controversy brewed as the Fallins began to erect a fence along their boundary line with the Corneliuses. Poet Robert Frost not-withstanding, this fence did not make good neighbors. The disputed prize, a sliver of earth seven feet in width along the north boundary line of the Corneliuses’ quarter-quarter and a pie shaped portion along the east boundary line of the same quarter-quarter, with dimensions of mere inches in width at the NE corner expanding to 27’ 4” at the SE corner. The aggregate for all of the disputed property is less than jé acre.
“Unable to agree like neighbors, or negotiate like enemies, the parties instead have resorted to the modern trial by ordeal of the land line dispute. Each has come to court armed with lawyers, duly qualified and registered land surveyors, maps and plats, eager and ready to do battle to protect their rights to property. In a process to be admired by alchemists of old they have, with the costs of lawyers’ fees, filing fees and deposition and discovery costs, converted the disputed acre from very rough, uncultivated and highly ordinary red clay earth, into what has become some of the most expensive real estate in Blount County.
“Enter two land surveyors. Their task, to establish the location on the ground of the north and east boundary lines of the Corneliuses’ property where it adjoins the Fallin property. The boundary lines to be located are not some vague or ambiguous ramblings of a mere common man made in an attempt to describe by ephemeral markers, land to be passed on to loved ones. There is no homemade description in these deeds the likes of ’27 paces to an old oak tree,’ or ‘proceeding in a northerly direction to the corner of Mr. Brown’s cornfield.’ No, the legal description to be interpreted into reality by the surveyors, and marked on the earth for all to see, is one so clear and so precise, that even the most cantankerous property law professor would approve: the north boundary line and the east boundary line of the SE % of the NW % of Section 4, Township 10 South, Range 2 East, Blount County, Alabama.
“We are here dealing with boundary lines that are established by the United States Government. Lines that are specific, sure and can be located with precision on maps issued by the United States Geological Survey. Lines that have been used since the beginning of this country to assure to one and all the certainty in the ownership of their farms and estates.
“But alas, the surveyors, both eminently qualified, both very experienced and both sure of their calls, their distances and their plats, are unable to agree on the location of the lines heretofore established by our government. Truly, nothing in this life is certain, save death and taxes. The surveyors’ inability to agree does, however, result in a new appreciation for the predicament of the landowners. For after all, if those who are licensed and registered in the measurement of land, with all of their skill, training, instruments and equipment, cannot agree on boundary lines, what hope is there for those of us who are mere mortals and who rely on the Stanley tape measure for distance and the eyeball for direction.
“This judge has heard the testimony of the parties, and that of the surveyors. He has examined the maps, the plats, and the photographs offered into evidence. He has, with the lawyers, viewed the disputed boundary area, now cleared by bulldozer, so that land, once overgrown and inaccessible, can now be fought over in the clear much as a demilitarized zone between warring countries.
“Were it not for rules of law which have been established by judges and lawmakers much wiser than this trial judge, that are steeped in a tradition of *411 disputes by neighbors over land since the beginning of courts and the judicial system, this judge would fare no better in the resolution of the dispute than the parties, surveyors, or lawyers. But in the evidence presented in Court and found from inspection of the premises are keys to the legal resolution of this dispute. The remnants of the old ‘turkey’ fence, also the northern boundary of the Cornelius property, and the complete absence of any evidence of possession by either party along the eastern boundary of the Cornelius property create strong presumptions to which the law may be applied.
“The law requires that where a fence has existed as a boundary for a period in excess of ten years between two coterminous owners, the fence becomes the boundary, regardless of the actual deed or survey line. In the absence of such physical evidence of possession, the line as called for in the deeds controls.
“The Court finds that based upon the remnants of the ‘turkey’ fence on the ground and embedded in the trees, that such fence existed for a period in excess of ten years, that the fence was intended as a boundary marker between the two adjoining property owners, and that the location of the fence coincides with the northern boundary line as drawn on the Burgett survey.
“The Court further finds that the old ‘turkey’ fence and Burgett survey line is the north boundary line of the Cornelius tract and the dividing line between the Corneliuses and the Fallins along that boundary line.
“The Court further finds, based upon the testimony and its inspection of the premises, no indicia of possession on the east boundary line; the quarter-quarter line as called for in the deeds is the boundary line. As to which survey to use in establishing the location of the east boundary line, the Court looks to three factors:
“1. The testimony of Frank Hollis, as to the prior existence of iron stobs or axles in the ground marking the corners of the east boundary line of the Cornelius property;
“2. The existence of the survey performed 30 years previously by Harvey Atkinson, and Frank Hollis’s testimony that his 1996 survey confirmed the accuracy of the Atkinson survey and the points established thereby, and;
“3. The testimony that there had never been a dispute as to the property lines between the neighbors from anytime before the Atkinson survey or for the 30 years after, until the Fallins procured the Burgett survey.
“For the above reasons the Court further finds that east boundary line of the quarter-quarter that is the Cornelius property is the boundary line as set out in the Frank Hollis survey.”
The Fallins appealed from this judgment to the supreme court. That court transferred the appeal to this court pursuant to Ala.Code 1975, § 12-2-7. On appeal the Fallins do not dispute the court’s determination that the “old turkey fence” served as the north-south boundary between the two parcels. The Fallins contend that the trial court erred in determining the east-west boundary line between the two parcels. Specifically, the Fallins argue that the trial court erred in basing its determination of the east-west boundary line on a possession survey.
It is well settled that a trial court’s judgment in a boundary line dispute, following ore tenus proceedings, is presumed correct and will be affirmed if supported by credible evidence. Bell v. Jackson, 530 So.2d 42 (Ala.1988). This presumption of correctness is enhanced in cases such as this where the trial court conducts an on-site inspection of the property in dispute. Id.
The Fallins argue that the trial court erred in basing its determination of the east-west boundary on the possession *412 survey performed by Frank Hollis at the request of the Corneliuses. The Fallins cite Sandlin v. Sanders, 360 So.2d 977 (Ala.1978), in support of this contention. In Sandlin, our supreme court determined that a possession survey did not constitute credible evidence to support the trial court’s determination of the boundary line, because the survey did not determine the boundary by metes and bounds. Nevertheless, the court in Sandlin affirmed the trial court’s determination of the boundary line because the record contained other credible evidence to support the trial court’s judgment, such as testimony regarding the location of monuments. Sandlin, 360 So.2d at 982.
In the present case, there was also a great deal of testimony regarding the existence of markers and monuments on the disputed property. Hollis testified that his staff ran lines from monuments that had been set by a prior survey. Burgett testified that he had actually sized the property in the survey he performed for the Fallins. There were nine photographs of portions of the property that were exhibits in the record, identified by David Fallin at trial. David Fallin testified that the pictures depicted portions of wire or remnants of an old wire fence in the trees, and he stated that these pictures were taken of trees located in close proximity to the east-west line in the Burgett survey.
The trial court heard David Fallin’s testimony firsthand and observed original photographs which assisted the court’s understanding of the evidence. In light of the fact that the trial court was in a superior position to weigh the evidence, wé cannot say the judgment of the trial court was erroneous. See Hall v. Harvey, 666 So.2d 3 (Ala.Civ.App.1995). In addition, the trial court inspected the property and was able to examine any wire fragments or fence portions firsthand.
After a thorough review of the record, we conclude that the record contains credible evidence to support the judgment of the trial court; that evidence appears in the form of Hollis’s testimony, which indicates that Hollis located all the monuments listed on the 1967 survey and confirmed the accuracy of that survey.
“It is the province and duty of the court to locate the disputed boundary line by finding and locating the true line. If this cannot be done with absolute certainty, the court should consider all the physical indications, reputation, general treatment of the parties, monuments, if any, and courses and distances.”
McLaurine v. Knowles, 257 Ala. 8, 10, 57 So.2d 543 (1952).
Because we find in the record credible evidence to support the judgment of the trial court, that judgment is due to be affirmed.
AFFIRMED.
YATES, MONROE, and CRAWLEY, JJ., concur.
ROBERTSON, P.J., concurs in the result.