WELCH, J.
12Carrie Barber Elliott appeals a judgment modifying the joint custody implementation plan previously agreed to between her and Eric J. Elliott. For reasons that follow, we affirm the judgment of the trial court.
FACTUAL AND PROCEDURAL HISTORY
The factual and procedural history of this case is more fully set forth in this court’s earlier opinion, Elliott v. Elliott, 2005-0181 (La.App. 1st Cir.5/11/05), 916 So.2d 221, writ denied, 2005-1547 (La.7/12/05), 905 So.2d 293. In sum, following the trial court’s denial of Carrie Elliott’s request to relocate the children’s residence to Natchitoches, Louisiana, the trial court modified the parties’ stipulated custodial arrangement by designating Eric Elliott as the children’s domiciliary parent and decreasing Carrie Elliott’s allocation of physical custody with the children. Carrie Elliott appealed the modification of the physical custody allocation, but did not challenge the ruling denying her request to relocate the children’s residence. On appeal, this court held, among other things, that Carrie Elliott’s notice to Eric Elliott of her proposed relocation with the children to Natchitoches was not a change in circumstances materially affecting the welfare of the children that would allow the court to revisit custody and re-measure the best interest of the child. Additionally, this court held that there was insufficient evidence in the record establishing that it was in the best interest of the children to alter the physical custodial arrangement so as to reduce the amount of time the children spent with their mother. Accordingly, this court reversed the judgment of the trial court insofar as it modified custody and vacated the joint custody implementation plan rendered in furtherance of that judgment.
Following this court’s decision, Carrie Elliott moved to Natchitoches without the children. On June 8, 2006, the parties stipulated to a modification of their joint custody implementation plan. The stipulated June 8, 2006 joint custody | ¡¡implementation plan provided that the parties would share joint legal custody of the minor children, that Eric Elliott would be designated as the domiciliary parent of the children, and that Carrie Elliott would have specific custodial periods. Essentially, Carrie Elliott’s regular custodial periods consisted of two consecutive weekends, which was followed by Eric Elliott having custody of the children for one weekend, and then the cycle would repeat. On the consecutive weekends, Carrie Elliott’s custodial periods would begin when school was dismissed on the day school adjourned for the weekend until Sunday (or until the day prior to school resuming). Carrie Elliott was responsible for picking the children up from school and returning the children for exchange at the Livonia Police Station. Carrie Elliott was also entitled to visit with the children in Pointe Coupee Parish one afternoon each week from 3:00 p.m. until 8:00 p.m. depending on their school schedule. Additionally, Carrie Elliott was awarded specific custodial periods during the Thanksgiving holidays, the Christmas holidays, Spring Break, Easter Weekend, Mother’s Day Weekend, the Mardi Gras holidays, the children’s birthdays and the summer.
*410 With regard to the exchange of the minor children, the joint custody implementation plan provided that except when Carrie Elliott picked up the children from school, on all holidays, summertime, and the first of Carrie Elliott’s consecutive weekends, she would exchange the children with Eric Elliott at the Texaco station/convenience store on Louisiana Highway 71 in Le-Compte, Louisiana, and on the second of her consecutive weekends, any mid-week visitations, and any occasional early pick up of the children to begin holiday visitation, she would exchange the children with Eric Elliott at the Livonia Police Station in Livonia, Louisiana.
After this plan was put into effect, Carrie Elliott, who had remarried, moved to Lindale, Texas due to her husband’s employment. In response to Carrie Elliott’s |4move to Texas, on June 13, 2008, Eric Elliott filed a rule to modify custody plan, asserting that there was a sufficient change in circumstances warranting a modification of the custody plan because of Carrie Elliott’s change in domicile and that the present plan was not in the best interest of the children, considering the distance between the domiciles of the parties. Eric Elliott further asserted that it was in the best interest of the children that he be granted sole custody, that the custody plan be modified, and that Carrie Elliott’s visitation schedule be adjusted. In response, Carrie Elliott filed a peremptory exception raising the objection of no cause of action with respect to Eric Elliott’s request and a motion for a custody evaluation.
A contradictory hearing was held on March 17, 2009. At the beginning of the hearing and after argument of counsel, the trial court denied Carrie Elliott’s motion for a custody evaluation and sustained her peremptory exception raising the objection of no cause of action as to Eric Elliott’s request for sole custody. After evidence was introduced and the matter submitted, the trial court modified the parties existing joint custody implementation plan to provide Carrie Elliott “visitation” with the children every other weekend, with one weekend visitation per month being allowed to take place in Lindale, Texas, and on the alternate weekend, Carrie Elliott’s visitation was to take place in Maringouin, Louisiana (or its surrounding area) or in Natchitoches (or its surrounding area). The trial court denied Carrie Elliott’s request for makeup days for the time she lost with her children due to the modification and ordered that the transportation exchange point would remain the same as set forth in the August 16, 2004 custody plan, and that for weekend visitation, Eric Elliott would meet Carrie Elliott at the exchange point every other time that Carrie Elliott had weekend visitation. A judgment in accordance with the trial court’s ruling was signed on December 1, 2009, and it is from this judgment that Carrie Elliott has appealed.
I,.ASSIGNMENTS OF ERROR
On appeal, Carrie Elliott asserts that the trial court erred in: (1) denying her motion for a custody evaluation; (2) failing to determine whether a change in circumstances materially affecting the welfare of the children had taken place; (3) finding that the modification of the parties joint custody implementation plan was in the best interest of the children; (4) ordering that Carrie Elliott have visitation with the children every other weekend, with only one of two weekends in the rotation being allowed to take place in Lindale, Texas; (5) denying Carrie Elliott any additional visitation days to makeup for the visitation lost due to the modification of her weekend visitation; and (6) determining that the extended weekend time should be considered a weekend visitation and not a holi *411 day visitation for the purposes of transportation exchange points.
CUSTODY EVALUATION
In Carrie Elliott’s first assignment of error, she contends that the trial court erred in denying her motion for a custody evaluation by a mental health professional. Her motion requested the evaluation on the basis that it was necessary to help determine if the children were affected by her move to Texas and what was in the best interest of the children.
Louisiana Revised Statutes 9:331 provides:
A. The court may order an evaluation of a party or the child in a custody or visitation proceeding for good cause shown. The evaluation shall be made by a mental health professional selected by the parties or by the court. The court may render judgment for costs of the evaluation, or any part thereof, against any party or parties, as it may consider equitable.
B. The court may order a party or the child to submit to and cooperate in the evaluation, testing, or interview by the mental health professional. The mental health professional shall provide the court and the parties with a written report. The mental health professional shall serve as the witness of the court, subject to cross-examination by a party.
Based on the use of the term “may” in this statute, it is clear that evaluations | fiOf parties or children by a mental health professional in a custody proceeding are permissive — not mandatory. See Silbernagel v. Silbernagel, 2006-0879, p. 11 (La.App. 5th Cir.4/11/07), 958 So.2d 13, 20. As such, the decision of whether an evaluation should be ordered lies within the trial court’s discretion. Scott v. Scott, 95-0816, p. 11 (La.App. 1st Cir 12/15/95), 665 So.2d 760, 767, writ denied, 96-0181 (La.2/2/96), 666 So.2d 1106. The trial court’s ruling in this regard will not be disturbed on appeal absent an abuse of that discretion. See Silbernagel, 2006-0879, p. 11-12, 958 So.2d at 20.
In this case, the trial court determined that an evaluation was not necessary because the only issue for it to determine was “whether or not it [was] ... in the best interest of the children, that they should be placed on the road under the present implementation [plan] for five hours, plus, each time they travel to visit with the [m]other ...” The court noted that because it was not concerned with any modification of the designation of the domiciliary parent, but rather, whether Carrie Elliott’s physical custodial periods should be modified because she moved further away, it was not “a situation [where the] [c]ourt could not make a decision.” Thus, the trial court apparently concluded that good cause to order the evaluation was not shown because it could render a decision on the particular issue before it without input from a mental health professional. Based on the record before us, we cannot say that the trial court abused its discretion in declining to order an evaluation of the parties and children.
MODIFICATION OF CARRIE ELLIOTT’S PHYSICAL CUSTODIAL PERIODS

General Legal Precepts

Every child custody case must be viewed in light of its own particular set of facts and circumstances. Elliott, 2005-0181 at p. 7, 916 So.2d at 226. The paramount consideration in any determination of child custody is the best interest 17of the child. Evans v. Lungrin, 97-0541, 97-0577, p. 12 (La.2/6/98), 708 So.2d 731, 738; La. C.C. art. 131. Thus, the trial court is in the best position to ascertain the best *412 interest of the child given each unique set of circumstances. Accordingly, a trial court’s determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Elliott, 2005-0181 at p. 7, 916 So.2d at 226.

Change in Custody

Carrie Elliott’s main contention on appeal is that the trial court erred in its modification of the allocation of physical custody of the children. Specifically, in her second and third assignments of error, she contends that the trial court legally erred in determining whether a change in circumstances materially affecting the welfare of the children had taken place since the June 8, 2006 stipulated joint custody implementation plan and in finding that the modification of the parties’ joint custody implementation plan was in the best interest of the children.
Eric Elliott’s motion to modify custody was based solely on Carrie Elliott’s move to Lindale, Texas. In his motion, he requested that that the appropriate modifications be made to Carrie Elliott’s visitation or physical custodial[1] schedule in light of her move.[2] Since the parties share joint custody of the children and because Eric Elliott sought a modification of the allocation of physical custody, this case must be considered a modification of custody. See Cedotal v. Cedotal, 2005-1524, p. 5 (La.App. 1st Cir.11/4/05), 927 So.2d 433, 436.
|sThere is a distinction between the burden of proof needed to change a custody plan ordered pursuant to a considered decree and that needed to change a custody plan ordered pursuant to a non-considered decree (or stipulated judgment). See Evans, 97-0541 at pp. 12-13, 708 So.2d at 738. A “considered decree” is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. Id.; Elliott, 2005-0181 at p. 8, 916 So.2d at 227. By contrast, a non-considered decree is one in which no evidence is presented as to the fitness of the parents, such as one that is entered by default, by stipulation or consent of the parties, or is otherwise not contested. Id.
Once a considered decree of permanent custody has been rendered by a court, the proponent of the change bears the heavy burden of proving that a change in circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or that harm likely caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986). However, in cases where the underlying custody decree is a stipulated judgment, and the parties have consented *413 to a custodial arrangement with no evidence as to parental fitness, the heavy burden of proof rule enunciated in Berger-on is inapplicable. Evans, 97-0541 at p. 13, 708 So.2d at 738; Elliott, 2005-0181 at pp. 8-9, 916 So.2d at 227. Rather, a party seeking a modification of a consent decree must prove that there has been a change in circumstances materially affecting the welfare of the child since the original (or previous) custody decree was entered and that the proposed modification is in the best interest of the child. Richard v. Richard, 2009-0299, p. 7 (La.App. 1st Cir.6/12/09), 20 So.3d 1061, 1066; Evans, 97-0541 at p. 13, 708 So.2d at 738; Elliott, 2005-0181 at p. 9, 916 So.2d at 227.
In this case, the underlying custody decree is the June 8, 2006 stipulated | ¡joint custody implementation plan. In order to modify that custody plan or decree, as requested by Eric Elliott, he had to prove, and the trial court had to find, that: (1) a change in circumstances materially affecting the welfare of the children had occurred since the rendition of the June 8, 2006 joint custody implementation plan and (2) the modification proposed by Eric Elliott — i.e., that appropriate modifications be made to Carrie Elliott’s physical custodial schedule in light of her move — was in the best interest of the children.
At trial, Eric Elliott testified that his primary concern with regard to the current joint custody implementation plan was the distance that the children were required to travel when their mother had physical custody of them. Specifically, on a physical custodial weekend with Carrie Elliott, the children spend approximately eleven and a half to twelve hours traveling during a forty-eight hour weekend. He acknowledged that while both children enjoy seeing their mother, the length of the drive to Lindale, Texas is long.
Carrie Elliott testified that she moved to Texas because of her husband’s job, which enabled her to stay at home. She stated that she did not expect anything to change with regard to her physical custody of the children, and she knew that the driving would be her responsibility. With regard to her weekend time, she testified her intent was to take the children to Texas at times and stay in the Maringouin or Baton Rouge area at other times. She stated that although she knew'the drive was long for the girls, they did not mind the drive because they were used to traveling and they were spending time with her.
In oral reasons for judgment, the trial court stated:
The Court finds, by a preponderance of the evidence, that the increased distance to Lindale from Natchitoches, which is approximately ... twice the distance of where now [Carrie Elliott] lived before, is a reason to modify the joint custody implementation plan.... [T]hat’s the only thing I find that convinces this court that I need to make a modification.
| mCarrie Elliott contends that the trial court erred in modifying the physical custodial allocation because the trial court failed to determine whether a change in circumstances materially affecting the welfare of the children had occurred, and further, that her move to Lindale, Texas was not a change in circumstances materially affecting the welfare of the children, citing in support Bonnecarrere v. Bonnecarrere, 2009-1647, p. 7 (La.App. 1st Cir.4/14/10), 37 So.3d 1038, 1044, writ denied, 2009-1639 (La.8/11/2010), 42 So.3d 381, wherein another panel of this court held that “[a]n interstate move by a non-domiciliary parent does not per se establish such a change.”
In Bonnecarrere, 2009-1647 at pp. 7-8, 37 So.3d at 1044-1045, the parties shared joint custody of the parties’ two children, *414 with the mother designated as the domiciliary parent, subject to specific custodial periods (every other weekend, holiday time, and extended time during the summer) to be exercised by the father. Thereafter, the father moved to Minnesota and sought to have his visitation or physical custodial schedule modified to ensure that he had frequent and continuing contact with his children. In requesting the modification of the physical custodial schedule, the father asserted that his move to Minnesota constituted a change in circumstances because the distance made the prior arrangement (wherein he enjoyed custody of the children every other weekend) “unworkable.” This court, noting that the father was not only required to show a change in circumstances, but also that the material change in circumstances affected the welfare of the children, concluded, in a plurality decision, that an interstate move by a non-domiciliary parent did not per se establish such a change. This court reasoned that although the father moved to Minnesota, the children were remaining in their home in Louisiana with their mother and maternal grandparents, and were close to them paternal grandparents. Further, this court noted that although the children would have less contact with their father, absent some evidence in the record that the [T1 children’s welfare was affected by the father’s move to Minnesota, the evidence was insufficient to meet the father’s burden in seeking a modification of the custody judgment Bon-necarrere, 2009-1647 at pp. 8-9, 37 So.3d at 1045.
Although Bonnecarrere is similar to the case before us — in that the non-domiciliary parent has moved out of state — we find it distinguishable. Bearing in mind that the focus must always be on the effect the change in circumstances has on the children, in Bonnecarrere, it was the non-domiciliary parent (the father) who sought the modification of custody based on his own move out-of-state because the plan in place became unworkable for him because of the distance that he moved. Due to the distance that either the father or the children (or both) would necessarily have to travel as a result of the move in order for the father to exercise physical custody, the father was unable to exercise his regular alternating weekend visitation. Although the father’s move resulted in a decrease in the time that the children would be in the physical custody of their father, this court found that such evidence did not demonstrate that the father’s move had an effect on the welfare of the children. And thus, the father’s interstate move was not — in and of itself — a change in circumstances materially affecting the welfare of the children.
However, in this case, it is the domiciliary parent who is seeking the modification of custody. The basis for the request for a modification was not based on the plan becoming unworkable due to the move or the distance itself that Carrie Elliott moved, but rather, that despite the distance that she moved, Carrie Elliott expected the physical custodial schedule to remain the same. Unlike the non-domiciliary parent in Bonnecarrere, Carrie Elliott still intended to and did exercise her regular physical custodial periods. In exercising her regular physical custodial weekends, the children were being subjected to significant travel time — approximately one-quarter of the weekend — several weekends per month. This significant travel time has an effect on the welfare of the children, and therefore, [ ]2we find that that Carrie Elliott’s move to Lindale, Texas was a change in circumstances materially affecting the welfare of the children.
We recognize under Bonnecarrere that although an interstate move by a non-domiciliary parent may not per se establish a change in circumstances materially af *415 fecting the welfare of the child, when, as in this case, the trial court finds that the non-domiciliary parent has moved a significant distance, still intends to exercise physical custodial time, and subjects the children to extensive travel time, such a move can establish a change in circumstances materially affecting the welfare of the children.
Having concluded that Eric Elliott met the first prong of his burden of proof in his request to modify custody, we must next consider whether the proposed modification was in the best interest of the children. In determining the best interest of the child, La. C.C. art. 134 enumerates twelve non-exclusive factors to be considered by the trial court, which include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems |isthe child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The list of factors set forth in this article is non-exclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. La. C.C. art. 134, comment (b).
As previously noted, the evidence at trial focused on the distance between Eric Elliott’s residence in Maringouin and Carrie Elliott’s new residence in Lindale, Texas and the length of time — five to five and a half hours — that it took to travel that distance. Carrie Elliott testified that they did not travel to Lindale, Texas every weekend, but on occasion would travel to her parent’s home in Hemphill, Texas (near Natchitoches, Louisiana area) or to her grandparent’s home in Gulfport, Mississippi. Additionally, Eric Elliott, during his testimony, expressed his concern that Carrie Elliott did not compromise with him on issues regarding the children’s extracurricular activities and he testified to a few specific examples where she refused to compromise. However, he also acknowledged that there were other occasions where she had accommodated the children’s extracurricular activities, as he requested.
After reviewing the evidence and testimony from the hearing, the only relevant factors discussed were factors (8), (10), and (11). The children have become involved in various extracurricular activities, such as dancing and volleyball, which have regularly scheduled events and games on weekends. According to the June 8, 2006 joint custody implementation plan, Carrie Elliott had physical custody of the children *416 three (and sometimes four) weekends per [ 14month, and the children’s ability to participate in extracurricular activities has been affected by the physical custodial allocation, particularly given the distance between the residences of the parties. Although the childi'en’s relationship with Carrie Elliott is of utmost importance, the physical custody allocation should also consider the children’s daily activities. Therefore, when considering these factors and the testimony at trial, we find that Eric Elliott sufficiently established that the children’s best interest was served by a modification of the parties’ joint custody implementation plan.
Because we have concluded that Eric Elliott satisfied his burden of proving both a change in circumstances materially affecting the welfare of the children and that it was in the children’s best interest to modify the joint custody implementation plan, we cannot say that the trial court abused its discretion in its ultimate determination that a modification of Carrie Elliott’s allocation of physical custody was warranted.[3]

Came Elliott’s Physical Custodial Periods

In Carrie Elliott’s remaining assignments of error, she complains about the specific provisions made by the trial court in its modification of the joint custody implementation plan.
In assignment of error number four, Carrie Elliott contends that the trial | lacourt erred in ordering that only one of her two alternating weekends of physical custodial periods could take place in hún-dale, Texas and that the other weekend custodial period had to take place in the area of Maringouin or in the area of Natchitoches. Carrie Elliott argues that the reason her weekend physical custodial periods were modified from consecutive weekends to every other weekend was .to eliminate the children being on the road for approximately eleven hours on consecutive weekends. Therefore, once the consecutive weekend physical custodial periods were eliminated, there was no reason for the trial court to order that only one of her alternating weekends could be spent in Lindale, Texas. In assignment of error number five, Carrie Elliott also contends that the trial court erred in failing to award her additional days during the year (i.e., during holidays and the summer) in order to makeup for the periods of physical custody that she lost as a result of the trial court’s decision to modify her weekend custodial periods.
When parents share joint custody of children, La. R.S. 9:335 requires an imple *417 mentation order to be rendered (except for good cause shown), which allocates each party’s physical custodial time periods, as well as the legal authority and responsibility of the parents. Louisiana Revised Statutes 9:335(A)(2)(a) and (b) requires frequent and continuing contact with both parents, and to the extent that it is feasible and in the best interest of the children, that physical custody of the children be shared equally.[4] The trial court is imbued with much discretion in the determination of what constitutes feasible, reasonable time periods of physical custody of the children. Caro v. Caro, 95-0173, p. 4 (La.App. 1st Cir.10/6/95), 671 So.2d 516, 519.
After reviewing the allocation of physical custody made by the trial court | 1fiand the geographical restriction imposed by the trial court with regard to Carrie Elliott’s alternating weekend custodial periods, we cannot say that the trial court abused its discretion. This geographical restriction on the alternating weekend ensures that the children have regular and frequent contact with then’ mother, but that they only travel the long distance approximately once a month. It also takes into consideration the extracurricular activities that the children may have on the weekends in the area of their domiciliary home.
With regard to Carrie Elliott’s request for additional days during the holidays and summer to makeup for the days of physical custody she lost on the weekends, we note that the trial court’s modification of the allocation of physical custody was limited to the regular weekend custodial periods and not the holiday and summer physical custody allocations. Thus, the trial court apparently concluded it. was not in the children’s best interest to modify those custodial times. While it is unfortunate that the distance Carrie Elliott moved has resulted in a decrease in the amount of time that the children will be in her physical custody, the trial court apparently determined that an award of extra days during the holidays or summer was not feasible to correct that loss and would result in a loss of most (if not all) of Eric Elliott’s already limited time during the holidays and the summer. Accordingly, we do not find that the trial court abused its discretion in failing to award Carrie Elliott additional makeup days.
In Carrie Elliott’s last assignment of error, she contends that the trial court erred with regard -to setting the transportation/exchange point for the children, specifically during extended weekend custodial periods. She contends that the transportation/exchange point should have remained the same as provided for in the June 8, 2006 joint custody implementation plan. The judgment reflects that the trial court changed the transportation/exchange point to the provisions set forth in the August 16, 2004 joint custody implementation plan, and that for weekend 117visitation, Eric Elliott was to meet Carrie Elliott at the exchange point every other time that Carrie Elliott had weekend visitation.[5] Again we note that the trial court is vested with much discretion when determining what is reasonable in the allocation of physical custody and in the allocation of the legal authority and responsibility of the parents, which would include issues such as transportation and exchanges points to facilitate each party’s custodial time. At the hearing in this *418 matter, Carrie Elliott testified that when she moved, she knew the extra driving was going to be her responsibility, and the extra driving did not bother her because she was accustomed to it. However, Eric Elliott testified that the current transportation/exchange point provisions were a hardship on him due to changes in his work schedule, which occurred after the parties entered into the June 8, 2006 stipulated joint custody implementation plan. Given this evidence, we cannot say that the trial court abused its' discretion in modifying the transportation and exchange point provisions.
CONCLUSION
For all of the above and foregoing reasons, the December 1, 2009 judgment of the trial court is hereby affirmed. All costs of these proceedings are assessed to the defendant/appellant, Carrie Barber Elliott.
AFFIRMED.

. Eric Elliott and Carrie Elliott share joint custody of their children. However, we note that both Eric Elliott and the trial court used the term "visitation.” "Visitation” as provided for in La. C.C. art. 136, applies only when a parent does not have custody or joint custody. The time that parents with joint legal custody share with their children is more properly described as physical custody allocation of a joint custody plan, rather than as visitation. La. R.S. 9:335; Cedotal v. Cedotal, 2005-1524, p. 5 (La.App. 1st Cir. 11/4/05), 927 So.2d 433, 436; see Evans v. Lungrin, 97-0541, pp. 10-11 (La.2/6/98), 708 So.2d 731, 737.

. Eric Elliott also requested that he be awarded sole custody of the minor children. However, as previously noted, the trial court dismissed this request pursuant to a peremptory exception raising the objection of no cause of action filed by Carrie Elliott. No issues have been raised on appeal with regard to this ruling by the trial court.

. As pointed out by Carrie Elliott in her brief to this court, the trial court’s oral reasons for judgment did not specifically articulate a factual finding that a change in circumstances materially affecting the welfare of the children had occurred or whether the proposed modification was in the best interest of the children. Instead, the trial court merely stated the increased distance warranted a modification of the joint custody implementation plan. Carrie Elliott contends that the trial court’s failure in this regard was legal error, warranting a de novo review of this matter. We disagree. Although from its reasons for judgment, we cannot determine what legal standard the trial court applied in this matter, it is well settled that appeals are taken from the judgment of the trial court, not its written reasons for judgment, and if the trial court reached the proper result, the judgment should be affirmed. See Schulingkamp v. Ochsner Clinic, 99-558, p. 8 (La.App. 5th Cir. 1/25/00), 752 So.2d 275, 279, writ denied, 2000-0618 (La.4/20/00), 760 So.2d 348. Accordingly, because the trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown and because we find, based on the record, that Eric Elliott met his burden of proof, we conclude that the trial court did not abuse its discretion in its determination that a modification of the physical custodial allocation was warranted.

. Given the distance between the residences of the parties, there is no dispute that equal sharing is not feasible in this case.

. We note that in Elliott, 2005-0181 at p. 15, 916 So.2d at 231, the August 16, 2004 joint custody implementation plan was vacated by this court. Additionally, the specific transportation/exchange point provisions of the August 16, 2004 judgment are not set forth in the record before us. However, it appears *418 that both parties are aware of the specific details of those provisions.