HIGGINBOTHAM, J.
|2This case is the second of two appeals from the same proceeding.[1] In this particular appeal, hereafter referred to as “To-bin II,” plaintiffs seek review of a trial court judgment sustaining defendants’ peremptory exceptions raising the objections of no cause of action and no right of action, and dismissing plaintiffs’ petition that sought a permanent injunction and declaratory judgment. For the following reasons, we affirm the trial court’s judgment.
FACTS AND PROCEDURAL HISTORY
The facts and procedural history of this case are essentially the same as outlined in the first appeal, Tobin, et al. v. Governor Bobby Jindal, in his Official Capacity as Governor of the State of Louisiana, and the Louisiana Board of Regents (Tobin I), 2011-0838 (La.App. 1st Cir.2/10/12), 91 So.3d 317, as follows:
During the 2010 Regular Legislative Session, the Louisiana State Senate adopted Senate Resolution 123 (SR 123), which directed defendant, the Louisiana Board of Regents (the Board), to “study the provision of public postsecondary ed *331 ucational opportunities in the New Orleans region, ... and formulate a plan that will make optimal use of all available ... resources, ... and which will allow each student attending such institutions to successfully and efficiently pursue his or her chosen academic path.” The Board was also directed by SR 12B to “submit a written report of its findings and recommendations to the Senate Committee on Education and the House Committee on Education, not later than March 1, 2011.”
The Board began to conduct a study of all the issues in SR 123, as well as the specific issues of a possible merger, consolidation, and transfer of New Orleans region institutions from one system to another.[2] One of the scenarios considered by the Board was the potential merger of Southern University at New Orleans (SUNO) with [¡¡the University of New Orleans (UNO), hereafter referred to as the “SUNO-UNO merger.”
Plaintiffs are all students at institutions in the Southern University System.[3] On February 14, 2011, plaintiffs filed suit against the Board and Louisiana Governor Bobby Jindal, in his official capacity, seeking a declaratory judgment, injunctive relief, and a temporary restraining order (TRO). Plaintiffs sought to enjoin and prohibit the Board from taking any and all actions relating to any proposed study of the SUNO-UNO merger, because plaintiffs alleged that the Board’s racial and gender composition (as appointed by the Governor) was unconstitutional, and therefore, violated their constitutionally-protected property interests in a higher education.[4] The trial court held a hearing on plaintiffs’ request for a preliminary injunction on February 24, 2011. Immediately after the hearing, the trial court denied the preliminary injunction and issued extensive written reasons for judgment, essentially concluding that plaintiffs failed to prove the necessary elements for issuance of a preliminary injunction under La. C.C.P. art. 3601. Plaintiffs appealed from the trial court’s February 24, 2011 judgment.
Tobin I, 91 So.3d at 319-20. (Footnote 5 omitted.)
At the February 24, 2011 hearing, the trial court also considered and overruled the Board’s and the Governor’s (collectively referred to as “defendants”) peremptory exceptions raising the objections of no cause of action and no right of action. However, the only issue involved in plaintiffs’ first appeal, Tobin I, was whether the trial court properly denied plaintiffs’ request for the issuance of a preliminary injunction, leaving plaintiffs’ request for a permanent injunction and declaratory judgment for resolution at another time.
While the first appeal was pending, plaintiffs filed a third supplemental and amended petition for declaratory judgment *332 and injunctive relief on March 9, 2011. In addition to their claims in the original and amended petitions, plaintiffs expanded their request for a permanent injunction to enjoin and prohibit the |4allegedly unconstitutionally-composed Board from taking “any and all actions and decisions” after December 17, 2010, the date that the appointed Board’s membership allegedly became unconstitutional. Plaintiffs further requested that the trial court issue a declaratory judgment, ruling that the Board’s membership as appointed by the Governor on December 17, 2010, was unconstitutional, in that the Board’s racial and gender composition was in violation of Louisiana Constitution Article 8, Section 5(B)(1), and therefore, any and all actions and decisions by the Board after December 17, 2010, regarding public institutions of higher education were unconstitutional. In response to plaintiffs’ third amended petition, defendants re-urged their peremptory exceptions raising the objections of no cause of action and no right of action.
On April 12, 2011, the trial court held a hearing on the exceptions, and after listening to oral argument and considering the law, pleadings, and submitted memoranda, the trial court ruled in favor of defendants, sustaining defendants’ peremptory exceptions and dismissing plaintiffs’ requests for permanent injunction and declaratory judgment with prejudice. The trial court’s written judgment was signed on April 20, 2011. Plaintiffs timely filed this second appeal, arguing that the trial court erroneously sustained defendants’ exceptions of no cause of action and no right of action.
LAW AND ANALYSIS
At the outset, we note that a peremptory exception may be urged at any time, and a party may re-urge a peremptory exception after it has been denied. La. C.C.P. art. 928; Louisiana State Bar Ass’n v. Carr and Associates, Inc., 2008-2114 (La.App. 1st Cir.5/8/09), 15 So.3d 158, 164, writ denied, 2009-1627 (La.10/80/09), 21 So.3d 292. We also initially point out that although we found plaintiffs’ first appeal regarding the denial of their preliminary injunction to be |smoot, because the act sought to be enjoined was accomplished pending that appeal, the same cannot be said of this second appeal.[5] Plaintiffs’ third amended petition seeks to enjoin the allegedly unconstitutionally-composed Board from taking any and all actions and decisions after December 17, 2010, not just those actions concerning the study and potential recommendation of the SUNO-UNO merger. Thus, we have subject matter jurisdiction and we maintain this appeal.[6]
The objection that a petition fails to state a cause of action is properly raised by the peremptory exception. La. C.C.P. art. 927(A)(5). A trial court’s judgment sustaining the peremptory exception raising the objection of no cause of action is *333 subject to de novo review by an appellate court, employing the same principles applicable to the trial court’s determination of the exception. Johansen v. Louisiana High School Athletic Ass’n, 2004-0987 (La.App. 1st Cir.6/29/05), 916 So.2d 1081, 1086. The purpose of the exception of no cause of action is to determine the sufficiency in law of the petition, in terms of whether the law extends a remedy to anyone under the petition’s factual allegations. Id.
The exception of no cause of action refers to the operative facts which give rise to the plaintiffs’ right to judicially assert the action against the defendants. Carr and Associates, 15 So.3d at 167. The exception is triable on the face of the pleadings, and for purposes of resolving the issues raised by the exception, the well-pleaded facts in the petition are accepted as true in order to determine whether | fithe law affords a remedy to anyone under the facts alleged in the petition. Id.; Johansen, 916 So.2d at 1086. Generally, no evidence may be introduced to support or controvert the exception of no cause of action. La. C.C.P. art. 981. However, Louisiana jurisprudence recognizes an exception to this rule, whereby evidence admitted without objection may be considered by the court as enlarging the pleadings. Johansen, 916 So.2d at 1086. We note in this case, the trial court admitted into evidence, without objection, the entire record from the hearing on the preliminary injunction at the hearing on defendants’ peremptory exceptions.
The pertinent question for determining the exception of no cause of action is whether, in the light most favorable to plaintiffs, and with every doubt resolved in plaintiffs’ favor, the petition states any valid cause of action for plaintiffs’ relief. Carr and Associates, 15 So.3d at 167. Plaintiffs are entitled to injunctive relief without the requisite showing of irreparable injury when the conduct sought to be restrained is unlawful, as when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law. Id., 15 So.3d at 168.
Plaintiffs maintain that the Board’s appointed membership was unconstitutionally composed, in that the membership did not reflect the racial and gender makeup of Louisiana’s population as required by La. Const, art. 8, § 5(B)(1), and that, therefore, all actions and decisions of the Board after December 17, 2010, the date that the Governor allegedly made unconstitutional appointments to the Board, are unlawful. For reasons similar to those articulated by the trial court in its oral and thorough reasons for judgment, we conclude that plaintiffs do not have a cause of action against the defendants.
The ultimate issue involves the proper interpretation of a statute, which is a question of law, subject to de novo review. Red Stick Studio Development, L.L.C. v. State ex rel. Dept. of Economic Development, 2010-0193 (La.1/19/11),7 56 So.3d 181, 187; In Re E.W., 2009-1589 (La.App. 1st Cir.5/7/10), 38 So.3d 1033, 1038. The question is whether La. Const, art. 8, § 5(B)(1) mandates a certain diversity requirement for the race and gender composition of the Board. The Board consists of fifteen persons appointed by the Governor with consent of the Louisiana Senate. See La. Const, art. 8, § 5(B)(1). The pertinent language concerning membership and diversity is as follows:
Article VIII. Education
§ 5. Board of Regents
(B)(1) Membership; Terms. The [B]oard shall be composed of two members from each congressional district and one from the state at large appointed by the [GJovernor, with consent of *334 the Senate, for overlapping terras of six years, following initial terms which shall be fixed by law. The [B]oard should be representative of the state’s population by race and gender to ensure diversity. (Italicized emphasis added.)
Plaintiffs’ position is that the diversity requirement in the last sentence of this particular section of the constitutional provision is mandatory, rather than permissive. However, the Louisiana Supreme Court has stated that the “modern view is that ‘should’ generally denotes discretion and should not be construed as ‘shall.’ ” Louisiana Seafood Management Council v. Louisiana Wildlife and Fisheries Com’n, 97-1367 (La.5/19/98), 715 So.2d 387, 394. Furthermore, where both mandatory words, such as “shall,” and permissive or directory words, such as “should,” are used in the same statute, or in the same section, paragraph, or sentence of a statute, it is a fair inference that the Legislature realized the difference in meaning, and intended that the words used should carry with them their ordinary meanings. Id. Thus, applying those principles to interpreting the constitutional article and section at issue, we conclude that the Legislature’s ordinary use of the word “should” in the unambiguous sentence pertaining to diversity was clearly intended to be permissive. A statute must be applied and | ^interpreted in a manner that is logical and consistent with the presumed fair purpose and intent of the Legislature. Harrah’s Bossier City Inv. Co., LLC v. Bridges, 2009-1916 (La.5/11/10), 41 So.3d 438, 447.
We find that plaintiffs’ allegation that the Board’s composition is unconstitutional is based on an erroneous premise that the diversity provision in La. Const, art. 8, § 5(B)(1) is mandatory, rather than a permissive instruction to the Governor and the Senate to consider the state’s population by race and gender when appointing and confirming members to the Board. The language of this provision simply does not lend itself to the mandatory interpretation maintained by plaintiffs. Therefore, the trial court correctly concluded in its written reasons for judgment that there is no “compelling argument or any rational reason to confer mandatory, obligatory language upon [La. Const, art. 8, § 5(B)(1)], thereby limiting the appointment powers of the [GJovernor.”
Plaintiffs have failed to plead any facts that would afford them any remedy in law against the Governor based on his appointments to the Board, or against the Board based on its composition. Thus, plaintiffs have failed to state a viable cause of action against defendants. The trial court’s judgment sustaining defendants’ peremptory exception raising the objection of no cause of action is legally correct, and plaintiffs’ first assignment of error lacks merit.
Having found no cause of action in the instant case, this court pretermits a discussion of the remaining assignment of error concerning the trial court’s ruling on the peremptory exception urging the objection of no right of action, because a proper analysis of that exception assumes that the petition states a valid cause of action. See Gisclair v. Louisiana Tax Com’n, 2010-0563 (La.9/24/10), 44 So.3d 272, 274 (quoting from Howard v. Administrators of Tulane Educational Fund, 2007-2224 (La.7/1/08), 986 So.2d 47, 59-60). See also Boatman v. Gorman, 92005-1369 (La.App. 1st Cir.2/7/06), 935 So.2d 696, 698, writ denied 2006-0539 (La.5/5/06), 927 So.2d 323.
CONCLUSION
For the above-stated reasons, we affirm the April 20, 2011 judgment of the trial court dismissing plaintiffs’ suit in its en *335 tirety. Plaintiffs are to pay all costs of this appeal.
AFFIRMED.

. The first appeal, Tobin, et al. v. Governor Bobby Jindal, in his Official Capacity as Governor of the State of Louisiana, and the Louisiana Board of Regents (Tobin I), 2011-0838 (La.App. 1st Cir.2/10/12), 91 So.3d 317, arose from a separate judgment rendered by the trial court on February 24, 2011, which denied plaintiffs' request for a preliminary injunction. In Tobin I, decided this same date, we dismissed the appeal as moot.

. Louisiana Constitution Article 8, Sections 5(D)(3)(a) and (b) authorize the Board to study, but not effect, a merger, consolidation, or transfer of a postsecondary institution from one system to another. To be effective, such measures and proposals require a two-thirds vote of the Legislature upon written recommendation by the Board. La. Const, art. 8, § 5(D)(3)(b).

. Plaintiffs, Eugenie Tobin and Ellis D. Brent, Jr., are students at SUNO, while plaintiffs, Charles E. Toney, Jr., Kye Lewis, Dadrius Lanus, Nykeisha Trenette Bryer, and Venese Machelle-Charity Morgan, are students at Southern University at Baton Rouge, including the Southern University Law Center (SUBR).

.The TRO was initially granted by the duty judge on the day plaintiffs filed their original petition, but the trial court dissolved the TRO a few days later, on February 18, 2011. The TRO request is not at issue in this appeal.

. We held in Tobin I, 91 So.3d at 322, that a court may take judicial notice of legislative records where preserved, as they are a matter of public record. Accordingly, as we did in Tobin /, we take judicial notice of the legislative history for SR 123 and of the fact that during the 2011 Regular Session, the Louisiana Legislature eventually amended the Board’s proposed SUNO-UNO merger recommendation, and the Governor ultimately signed into law a transfer of UNO that did not affect SUNO. See La. R.S. 17:3217, as amended and reenacted, and La. R.S. 17:3230 and 17:3241, as enacted by 2011 La. Acts, No. 419, § 1, effective July 12, 2011. Id., 91 So.3d at 322.

. In the interest of judicial economy, an appellate court may consider the possibility of mootness on its own motion and dismiss the appeal if the matter has in fact become moot and jurisdiction has abated. See Tobin I, 91 So.3d at 321 n. 6.