## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CU 0544

AMANDA LYNN MARS

VERSUS

DONALD RAY MARS, JR.

*DATE OF JUDGMENT:* SEP 2 7 2019

ON APPEAL FROM THE TWENTY FIRST JUDICIAL DISTRICT COURT
NUMBER 2015-0001569, DIVISION K, PARISH OF TANGIPAHOA
STATE OF LOUISIANA

HONORABLE JEFFERY T. OGLESBEE, JUDGE

* * * * * *

Sherman Q. Mack
C. Glenn Westmoreland
Emily Guidry Jones
Albany, Louisiana

Marcus J. Plaisance
Mark D. Plaisance
Prairieville, Louisiana

Anthony Bradley Berner
Hammond, Louisiana

Counsel for Plaintiff - Appellant
Amanda Lynn Mars

Counsel for Defendant - Appellee
Donald Ray Mars, Jr.

* * * * * *

BEFORE: MCDONALD, THERIOT, AND CHUTZ, JJ.

Disposition: VACATED IN PART; AFFIRMED IN PART; REVERSED IN PART WITH PRIOR PHYSICAL CUSTODY AWARD REINSTATED.

**CHUTZ, J.**

Plaintiff-appellant, Amanda Lynn Mars, appeals the family court's judgment, granting in part and denying in part her request for the modification of the custody of her two minor children and for the appointment of a custody evaluator in these proceedings against her former husband, defendant-appellee, Donald Ray Mars, Jr.[1] We vacate in part, affirm in part, and reverse in part, reinstating a prior award of physical custody.

## FACTUAL AND PROCEDURAL BACKGROUND

Ms. Mars instituted this litigation against Mr. Mars with a petition for divorce and incidental relief, and Mr. Mars filed a reconventional demand. After a trial, on November 3, 2015, the parties were awarded joint custody of their one- and two-year-old children, with Ms. Mars designated as the domiciliary parent. Additionally, the judgment set forth a detailed visitation schedule.

The parties subsequently entered into an interim stipulated judgment on January 8, 2016, in which Mr. Mars was named the domiciliary parent and Ms. Mars was awarded limited supervised visitation. On June 3, 2016, after a hearing and the receipt of evidence, the family court modified the stipulated judgment, ordering that Ms. Mars's visitation no longer required supervision. Her physical custody of the children was set for alternating weekends and Wednesday afternoons after the minor children were dismissed from school. She was required to continue appropriate therapy and counseling as recommended by her physicians, abstain from the consumption of alcohol or other intoxicating substances (not prescribed by a doctor) when enjoying physical custody, and not permit any person with whom she was engaged in a romantic relationship (including a specifically

---

[1] Ms. Mars's request to have Mr. Mars held in contempt was denied and she has not appealed that ruling.

2

named individual) to have contact with the children. Mr. Mars was maintained as the domiciliary parent.

On July 26, 2016, the family court signed a judgment, granting the parties a divorce. Pursuant to the family court's previous order that it would review the matter, a hearing was held on May 22, 2017. And in a judgment dated June 26, 2017, Ms. Mars was awarded physical custody of the children for the first and third weeks of June and July.

Ms. Mars filed a rule to modify custody and for the appointment of a custody evaluator on September 21, 2017, requesting to be named domiciliary parent and seeking additional physical custody of the children. Ms. Mars also alleged that it was in the children's best interests that the family court appoint a mental health professional and require that the parties submit to a custody evaluation.

After a hearing on August 23, 2018, the family court rendered judgment, awarding the parties joint custody of the children, maintaining Mr. Mars as the domiciliary parent with a modification of Ms. Mars's physical custody, and denying the request for the appointment of a custody evaluator. Ms. Mars appeals.

## NO CAUSE OF ACTION

Initially, we note that the appealed judgment expressly "GRANTED" a peremptory exception of no cause of action that Mr. Mars filed in response to Ms. Mars's September 21, 2017 rule. On appeal, Ms. Mars urges that the family court erred in doing so.

The objection that a petition fails to state a cause of action is properly raised by the peremptory exception. La. C.C.P. art. 927A(5). The purpose of the exception of no cause of action is to determine the sufficiency in law of the petition, in terms of whether the law extends a remedy to anyone under the

petition's factual allegations. The exception of no cause of action refers to the operative facts which give rise to a plaintiff's right to judicially assert the action against the defendant. *Tobin v. Jindal*, 2011-1004 (La. App. 1st Cir. 2/10/12), 91 So.3d 329, 333.

The exception is triable on the face of the pleadings, and for purposes of resolving the issues raised by the exception, the well-pleaded facts in the petition are accepted as true in order to determine whether the law affords a remedy to anyone under the facts alleged in the petition. Generally, no evidence may be introduced to support or controvert the exception of no cause of action. La. C.C.P. art. 931. However, Louisiana jurisprudence recognizes an exception to this rule, whereby evidence admitted without objection may be considered by the court as enlarging the pleadings. *Tobin*, 91 So.3d at 333.

In this case, testimonial and documentary evidence was admitted without objection, thereby enlarging the pleadings. But a close scrutiny of the appealed judgment shows that Ms. Mars's claims were not dismissed on the basis that her pleading failed to state a cause of action. The judgment simply "GRANTED" the exception without dismissing any of Ms. Mars's claims. Importantly, the judgment expressly awarded joint custody to the parties; designated that Mr. Mars was the domiciliary parent; modified Ms. Mars's physical custody of the children to provide an additional weekend each month with the children while rescinding her prior Wednesday afternoon custody; and denied her request for a custody evaluation. Thus, the family court rendered judgment, partly denying her requested relief and partly granting it, implicitly concluding that Ms. Mars stated a cause of action. Although in its oral reasons for judgment the family court judge indicated the exception of no cause of action was sustained insofar as maintenance of "joint custody with Mr. Mars as the domiciliary parent," the judgment granted the

4

exception without limitation. Since it is the judgment -- not the reasons for judgment -- from which a party appeals, see *Wooley v. Lucksinger*, 2009-0571 (La. 4/1/11), 61 So.3d 507, 572, that portion of the judgment which "GRANTS" the exception of no cause of action is vacated. This, however, does not terminate our review.[2]

## DOMICILIARY PARENT DESIGNATION

Turning to the merits of her appeal, we note that when a family court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. *Bergeron v. Bergeron*, 492 So.2d 1193, 1200 (La. 1986). Upon appellate review, the determination of the family court in child custody matters is entitled to great weight, and its discretion will not be disturbed on review in the absence of a clear showing of abuse. *Id.*, 492 So.2d at 1196; *Howze v. Howze*, 2017-0358 (La. App. 1st Cir. 9/28/17), 232 So.3d 606, 608-09. The abuse of discretion standard is a higher standard of deference than the manifest error standard, applicable to cases where "the substantive law vests a high degree of discretion in the [family court] judge." *Gathen v. Gathen*, 2010-2312 (La. 5/10/11), 66 So.3d 1, 8-9 n.4 (quoting Frank L. Maraist, *Louisiana Civil Law Treatise: Civil Procedure*, Volume I, § 14:14, 558 (2d ed. 2008)). Additionally, as in most child custody cases, the trial court's determination as to what is in the best interest of the child is based heavily on factual findings. It is well settled that an appellate court may not set aside a trial

---

[2] We disagree with Ms. Mars's assertion that the sustaining of the exception of no cause of action additionally warrants a remand for a full evidentiary hearing on the custody issue. In rendering its judgment, the family court judge permitted Ms. Mars a full presentation of evidence without limitation including "consideration of the predominate factors for the award of custody."

court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. *Ehlinger v. Ehlinger*, 2017-1120 (La. App. 1st Cir. 5/29/18), 251 So.3d 418, 422.

Ms. Mars contends that a change in the domiciliary parent designation is supported by evidence showing that the children suffered from emotional distress due to the limited time they are able to spend time with her. Our review of the evidence reveals that Ms. Mars testified that she noticed that the parties' son had begun stress eating before the transitions from her house to his father's during her weekend custody although not during the weekly summer visits. She also testified that the children did not have temper tantrums or cry when it was time for them to return to their father's house after weekly summer visitation, which contrasted starkly with their behavior during the weekend, school-year schedule. Ms. Mars identified concerns she had with her son's conduct, noting that during the last four weeks of kindergarten, he had issues with conflict and self-control.

Terry King, the children's maternal grandfather, testified about his grandchildren's wellbeing. He stated that they clung to their mother when it was time for them to go back to their father's house. He found the children to be more relaxed during the summer week-long visits with their mother and indicated that they were less upset during the transition times back to their father's house as well. Mr. King said that he had seen his grandson hitting himself in his head twice. He also worried because his grandson had become overly competitive and had issues with his temper. Mr. King recalled having witnessed his grandson punch sheetrock although he lacked the strength to create a hole.

Mr. Mars testified that he had not seen his son stress eating or hitting himself. Additionally, he stated that he had never been contacted by the school or a medical provider regarding the children's behavior. After Ms. Mars pointed out a

decline in their son's conduct at the end of kindergarten, Mr. Mars contacted the teacher who assured him that the child was simply antsy at the end of the school year and was doing fine.

Ms. Mars also asserted another basis to support a change in the domiciliary parent designation was the poor communication between her and Mr. Mars while he has been the domiciliary parent. She buttressed this with the assertion that Mr. Mars refused to allow the children to talk to her when they were in his custody, suggesting that he was not co-parenting with her. In support of her concerns, she offered 17 exhibits printed from Family Wizard, showing the parties' communication. Ms. Mars stated that she repeatedly asked Mr. Mars for phone visitation but was denied. He told her that her request for daily phone conversations with the children was "ridiculous" and that he would not "force" them to talk to someone with whom they did not want to speak. Ms. Mars also complained that on eight occasions, she asked to keep the children for additional time, but that Mr. Mars would not acquiesce. Ms. Mars acknowledged that when she requested additional time with the children, Mr. Mars did not allow it, because he wanted to keep the children on a consistent schedule and valued his time with them.

Ms. Mars's also relied on the testimony of Dr. Stephen Thompson, who was accepted as an expert in child custody. He did not examine either of the parties or the children. But based on a full access to Family Wizard, he determined that there was a lot of conflict between the parents. He described the parental coordination between the parties as "dysfunctional." Dr. Thompson testified that in his opinion children should be able to call the other parent whenever they want. He believed that daily contact was appropriate.

Mr. Mars testified that phone visitation was not something that came up often but that when Ms. Mars asked to speak with the children, he allowed it on all but one occasion when their son did not want to talk. Mr. Mars did not think that the children needed to talk to the other parent daily, suggesting that it would disrupt the children's schedules. He stated that if one of the children asked to talk to Ms. Mars, he would not deny the child. Mr. Mars also believed it was inconsistent with the family's schedules to give Ms. Mars more time with the children. He explained he did not give Ms. Mars more time to visit the children because, as the owner of a business, he has to plan events in advance, his family wants to see the children at these planned events, and that Ms. Mars often requested additional time at the last minute. Mr. Mars testified that he is not required to give Ms. Mars additional time but also said that he had never denied her any of her court-ordered custody.

Ms. Mars believed that Mr. Mars was trying to prevent her from attending the children's medical appointments. She testified that she asked Mr. Mars who the children's pediatrician was, but he did not provide her with the information. She recounted an occasion when she took one of the children to the doctor with an expired medical insurance card that Mr. Mars had provided to her. When she was provided copies of texts messages between Mr. Mars and her, Ms. Mars conceded that she had been apprised of multiple doctors' appointments. She was able to identify one medical appointment, an apparent vision evaluation of their son, for which Mr. Mars had failed to inform her which occurred prior to July 2017.

According to Mr. Mars's testimony, the children's health insurance has never lapsed. The policy had inadvertently been canceled due to an administrative miscommunication but after he contacted the insurance company, coverage was reinstated. He also testified that he had informed Ms. Mars of all the children's

8

doctor's appointments, and indicated the children's pediatrician was the same one they have had "forever."

Lastly, in support of a conclusion that she has proven entitlement to the domiciliary parent designation, Ms. Mars maintained that Mr. Mars speaks negatively about her to the children, increasing the alienation of affection. She testified that Mr. Mars accused her of returning to the use of illegal drugs; told parents at the school that she had "lost" her children; publicly described her using profanity; and told her in written communication that her parents did everything for her. Ms. Mars stated that Mr. Mars does not consult her about how to attend to the children; he tells her what to do. According to Ms. Mars, Mr. Mars consistently threatens her with loss of time with the children to ensure she complies.

Ms. Mars complained of Mr. Mars's response to her questioning of the manner in which he distributed that limited number of tickets to their son's kindergarten graduation after he provided her with only two of the six tickets. When she requested three of the tickets, Mr. Mars wrote her on Family Wizard that he only had to give her one and that she should "[t]hink of the other one as a gift." She suggested that the tone of his response was indicative of his treatment toward her when others were around. Ms. Mars also complained about the lack of communication Mr. Mars maintains with her parents. Mr. King likewise challenged the quality of Mr. Mars's co-parenting, testifying that Mr. King "is the boss."

Mr. Mars denied having ever made derogatory comments to Ms. Mars in public. He also denied having stated that she was on drugs in front of the children, although he admitted he may have done so in a Family Wizard message. Mr. Mars stated that some of the things to which Ms. Mars had testified "flat out [did] not happen." He also said that when his son was upset about having to go to Ms. Mar's

9

home for a week or on the weekend, he encouraged the boy because he wants his son to be happy.

According to Mr. Mars, he is uncomfortable with someone that has Ms. Mars's history taking care of the children. He explained her past alcohol, drug, and/or pill abuse has resulted in periods where she does well for a time but that later she relapses. Mr. Mars also had concerns about the men that Ms. Mars had dated in the past, indicating of them some had been on drugs. Although he conceded that due to their lack of communication, he was unaware of the advancements that Ms. Mars had made, which include working full time as a parish school teacher, obtaining a master's degree in education, and volunteering with community and church organizations, Mr. Mars stated that he honestly hoped she would continue with recovery.

Our review of the record also shows that upon examination of their son's school records, Ms. Mars testified that he had a good year in kindergarten insofar as his attendance and grades. Similarly, Ms. Mars acknowledged that the school records for their daughter showed she was doing "really well" with no behavioral problems. Mr. Mars testified that the present custodial arrangements were working well. He explained that both of the children were "doing great."

Where there was conflicting evidence, the family court was free to disregard Ms. Mars's version of the facts in favor of Mr. Mars's. See *Stobart v. State*, 617 So.2d 880, 882. Mindful that the family court's conclusion in its custody determination is entitled to great deference, we cannot say that it abused its discretion in its conclusion maintaining Mr. Mars as the domiciliary parent. While Ms. Mars was able to point out some problems between the couple in co-parenting, the evidence simply does not establish that the continuation of the domiciliary parental designation with Mr. Mars is deleterious to the children so as to justify a

modification. Ms. Mars failed to prove by clear and convincing evidence that the harm likely to be caused by changing the domiciliary parent designation is substantially outweighed by its advantages to the child. Accordingly, we find no error in the family court's determination continuing the domiciliary parent designation with Mr. Mars.

## PHYSICAL CUSTODY

On appeal, Ms. Mars avers that the family court erred in its modification of her visitation schedule. She asserts that with the elimination of Wednesday afternoon visits and the replacement of one additional weekend each month, she enjoys substantially less time with the children.[3]

Other circuits have noted that as a practical matter, courts may "tweak" visitation schedules even when the evidence will not support modifying a prior considered decree. See e.g., *Mason v. Mason*, 2016-287 (La. App. 3d Cir. 10/5/16), 203 So.3d 519, 529; *Brantley v. Kaler*, 43,418 (La. App. 2d Cir. 6/4/08), 986 So.2d 188, 191. Visitation is always open to change when the conditions warrant it. However, courts are not permitted to apply the more flexible standard of visitation to circumvent the principles and protection announced in *Bergeron*. *Howze v. Howze*, 2017-0358 (La. App. 1st Cir. 9/28/17), 232 So.3d 606, 610-11 (citing *Mason*, 203 So.3d at 529; *Brantley*, 986 So.2d at 192).

The first circuit has recognized that the standard to modify visitation and to modify custody are separate and distinct. The time that parents with joint legal custody share with their child is more properly described as a "physical" or "actual" custody allocation of a joint custody plan, rather than visitation. The typical joint custody plan will allocate time periods for physical custody between

---

[3] We do not necessarily agree with Ms. Mars's assertion that the change of her time with the children is significantly less with the adjustment made by the family court in the appealed judgment. While, over the course of a year, she may have fewer *days* with an additional weekend each month, she may actually have fewer *hours* with the three-hour Wednesday afternoon physical custody.

parents so as to promote a sharing of the care and custody of the child in such a way as to ensure the child of frequent and continuing contact with both parents. *Howze*, 232 So.3d at 610-11.

When Ms. Mars filed her rule to change custody, in addition to designation as the domiciliary parent, she requested that Mr. Mars be given a schedule of actual visitation. During the presentation of her case, which enlarged the pleadings without objection, Ms. Mars made it clear that she sought every other week of actual custody to each parent. Thus, she was sought to modify custody, not visitation. As such, the more flexible standard of visitation could not be used to circumvent the principles and protection announced in ***Bergeron***. See *Howze*, 232 So.3d at 611.

The record demonstrates that during those times of the year that the parties' son participates in baseball, Ms. Mars is unable to fully enjoy her Wednesday afternoon custody with the children due to his practice schedule. Although it appears the family court attempted to accommodate her by allowing her an additional weekend with the children rather than Wednesday afternoons, neither she nor Mr. Mars requested this modification. Applying the ***Bergeron*** standard, the record fails to establish that the continuation of Ms. Mars's Wednesday afternoon physical custody of the children is deleterious to the children so as to justify a modification. Likewise, nothing establishes by clear and convincing evidence that any harm likely to be caused by a change of physical custody to an additional weekend each month from Wednesday afternoons would be substantially outweighed by its advantages to the children. Therefore, the change in Ms. Mars's actual custody of the children to one weekend a month from each Wednesday

afternoon is reversed.[4] We reinstate the award of Wednesday afternoon physical custody of the children to Ms. Mars as set forth in the January 17, 2017 and June 26, 2017 judgments.

## CUSTODY EVALUATION

Ms. Mars urges that the family court erred in the denial of her request for a custody evaluation. She maintains that Dr. Thompson's expert testimony, along with the messages from Family Wizard admitted into evidence, would assist in making a proper domiciliary parent determination.

La. R.S. 9:331 provides:

> A. The court may order an evaluation of a party or the child in a custody or visitation proceeding for good cause shown. The evaluation shall be made by a mental health professional selected by the parties or by the court. The court may render judgment for costs of the evaluation, or any part thereof, against any party or parties, as it may consider equitable.
>
> B. The court may order a party or the child to submit to and cooperate in the evaluation, testing, or interview by the mental health professional. The mental health professional shall provide the court and the parties with a written report. The mental health professional shall serve as the witness of the court, subject to cross-examination by a party.

Based on the use of the term "may" in this statute, it is clear that evaluations of parties or children by a mental health professional in a custody proceeding are permissive -- not mandatory. *Elliott v. Elliott*, 2010-0755 (La. App. 1st Cir. 9/10/10), 49 So.3d 407, 411, writ denied, 2010-2260 (La. 10/27/10), 48 So.3d 1088. As such, the decision of whether an evaluation should be ordered lies within the family court's discretion. *Id.*, (citing *Scott v. Scott*, 95-0816 (La. App. 1st Cir 12/15/95), 665 So.2d 760, 767, writ denied, 96-0181 (La. 2/2/96), 666 So.2d

---

[4] Based on Ms. Mars's testimony, the family court interpreted her request for physical custody to include those school holidays that had never been addressed in any judgment of the court. Thus, Ms. Mars was awarded physical custody of the children on alternative years for Martin Luther King Day, Labor Day, Memorial Day, Mardi Gras Day, and Fair Day. Neither Ms. Mars nor Mr. Mars has raised any contentions challenging this allocation by the family court and, therefore, it is not before us in this appeal.

13

1106). The family court's ruling in this regard will not be disturbed on appeal absent an abuse of that discretion. *Elliott*, 49 So.3d at 411.

The record establishes that after several years of litigation, the family court was quite familiar with these parties. Dr. Thompson was permitted to testify, and the family court reiterated to the parties in its oral reasons the soundness of some of custody expert's suggestions, urging in particular a fuller use of the Family Wizard. However, the family court apparently believed that the appointment of a psychological evaluation was unnecessary to its determination that the best interests of the children did not require a change in the designation of the domiciliary parent. We cannot say the family court abused its discretion in denying Ms. Mars's request for a custody evaluation.

### DECREE

For these reasons, we vacate that portion of the judgment which "GRANTED" the "Exception of No Cause of Action." Those portions of the judgment that awards the parties joint custody and designates Mr. Mars as the domiciliary parent as well as the denial of the request for a custody evaluation are affirmed. That portion of the judgment that rescinds Ms. Mars's Wednesday night visitation and awards her an additional (third) weekend every month is reversed. Ms. Mars's visitation, which she enjoys every Wednesday from after school until 6 p.m. and, in the event there is no school, the Wednesday custodial time commenced from 3 p.m., is reinstated. Appeal costs are assessed one-half to plaintiff-appellant, Amanda Lynn Mars, and one-half to defendant-appellee, Donald Ray Mars, Jr.

**VACATED IN PART; AFFIRMED IN PART; REVERSED IN PART WITH PRIOR PHYSICAL CUSTODY AWARD REINSTATED.**