GUIDRY, J.
Pefendant, John P. Bonnecarrere, III, appeals from a judgment of the trial court, maintaining joint custody and visitation as detailed in a prior judgment, except that beginning in calendar year 2011, the geographic restriction as to visitation is to be lifted and John will be granted additional summertime visitation, reducing his child support obligation, and ordering him to pay 82.2 percent of his children’s uncovered medical, dental, vision, and orthodontic expenses. Plaintiff, Amanda Ellzey Bonnecarrere, answers the appeal, contesting the trial court’s reduction in child support. For the reasons that follow, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
Amanda and John were married on February 3, 2002, in Vernon Parish, Louisiana and later established a matrimonial domicile in Tangipahoa Parish, Louisiana. Two children, Victoria and Abigail, were born of the marriage on January 11, 2005, and March 23, 2007, respectively.
On January 25, 2008, Amanda filed for divorce under La. C.C. art. 102. In her petition, Amanda requested that the court order joint custody of the two children, with Amanda being designated as the domiciliary parent and with John being granted liberal visitation at his parents’ home in Pearl River, Louisiana. She also *1042 requested that John pay child support, that John pay for his proportionate share of medical and dental expenses, that the children remain on John’s health insurance, and that a temporary restraining order be issued.
On July 9, 2008, John filed a motion and order for visitation, stating that he was presently serving in the armed forces in Iraq, but that he was scheduled to return to the country between July 18 and 25. Accordingly, he requested an order from the court insuring that he would have visitation during this period, and additionally requested that a hearing be set for the purpose of setting forth a permanent visitation schedule with the children. The trial court issued an order permitting the July 2008 visitation and set the matter of permanent visitation for a hearing on July 28, 2008.
At the conclusion of the July 28, 2008 hearing, a stipulation as to visitation was entered into the record. Thereafter, in a judgment dated September 12, 2008, which memorialized the parties’ stipulations, the trial court granted the parties joint custody of the two children, with Amanda being designated as the domiciliary parent, subject to visitation in favor of John. The judgment outlined specific holiday visitation on behalf of John for 2008 and also provided for John to have additional reasonable visitation to be agreed upon by the parties. Additionally, the judgment provided that John was to have the children for two weeks in the summer. However, John was ordered not to remove the children from the jurisdiction of the court or the State of Louisiana.
With regard to child support, the September 12, 2008 judgment ordered John to pay $2043.00 per month, together with 91 percent of the children’s uncovered medical and dental expenses through August 2008, and $1413.00 per month, together with 80 percent of the children’s uncovered medical, dental, vision, and orthodontic expenses beginning September 1, 2008. This judgment was signed by the parties and by the trial judge.
On October 17, 2008, John filed a motion and order for reduction in child support and to set a visitation schedule. John asserted that he was now a resident of Pipestone, Minnesota, that his income had been altered considerably by the circumstances of his present employment, and that the child care expenses for his children had decreased. Because of these changes in circumstances, John requested a reduction in child support and also a modification of the visitation schedule so as to ensure that he has frequent and continuing contact with his minor children.
Thereafter, Amanda filed a rule to show cause for a temporary restraining order and injunctions and rule to show cause for restricted and supervised visitation.
Following a hearing on these issues, the trial court rendered and signed a judgment on March 30, 2009, maintaining joint custody of the children, with Amanda continuing to be designated as the primary domiciliary parent, subject to visitation in favor of John. The court maintained the visitation schedule as provided in the September 12, 2008 judgment, including the restriction that John could not remove the children from the jurisdiction of the court or the State of Louisiana. However, beginning in 2011, the judgment removes the geographic restriction and grants John additional summertime visitation for either the entire month of June or July at John’s election. After 2011, the judgment grants John six weeks of summertime visitation at his election between June 1 and August 1. Further, with regard to child support, the trial court reduced John’s support obligation to $877.07 per month and ordered *1043 John to pay 82.2 percent of the children’s uncovered medical, dental, vision, and orthodontic expenses.
Amanda filed a motion for new trial as to the reduction in child support, which was denied. John now appeals from the March 30, 2009 judgment, asserting that the trial court erred: (1) in allowing him only limited in-state visitation; (2) in not ordering Amanda to install a web camera, at his expense, so that he could maintain video contact between he and his children between periods of physical custody; and (3) in not limiting his obligation for his proportionate share of medical expenses to “extraordinary” medical expenses. Additionally, Amanda answers the appeal, asserting that the trial court erred in reducing John’s child support obligation from $1,413.00 to $877.07.
DISCUSSION

“Visitation”

As stated previously, John and Amanda enjoy joint custody of their two children. The trial court and the parties refer to John’s time with the children as visitation. “Visitation,” as provided for in La. C.C. art. 136, however, applies only when a parent does not have custody or joint custody. The time that parents with joint legal custody share with their child is more properly described as a physical custody allocation of a joint custody plan. La. R.S. 9:335; Cedotal v. Cedotal, 05-1524, p. 5 (La.App. 1st Cir.11/4/05), 927 So.2d 433, 436. Accordingly, because John sought modification of the allocation of physical custody in the September 12, 2008 judgment, this case must be considered as a modification of custody. See Cedotal, 05-1524 at pp. 5-6, 927 So.2d at 436; Jackson v. Harris, 05-604, pp. 4-5 (La.App. 3rd Cir.12/30/05), 918 So.2d 1163, 1166; Lee v. Lee, 34,025, p. 4 (La.App. 2nd Cir.8/25/00), 766 So.2d 723, 725-726, writ denied, 00-2680 (La.11/13/00), 774 So.2d 150.
The burden of proof on a party seeking to modify a prior permanent custody award is dependent on the nature of the underlying custody award. Custody awards are commonly made in two types of decisions. The first is through a stipulated judgment, such as when the parties consent to a custodial arrangement. The second is through a considered decree, wherein the trial court receives evidence of parental fitness to exercise care, custody, and control of a child. Shaffer v. Shaffer, 00-1251, p. 3 (La.App. 1st Cir.9/13/00), 808 So.2d 354, 356, writ denied, 00-2838 (La.11/13/00), 774 So.2d 151.
When the original custody decree is a stipulated judgment, a party seeking modification of custody must prove that a change materially affecting the welfare of the child has occurred since the original decree and that the proposed modification is in the best interest of the child. Richard v. Richard, 09-0299, p. 7 (La.App. 1st Cir.6/12/09), 20 So.3d 1061, 1066. However, when a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is “so deleterious to the child as to justify a modification of the custody decree,” or of proving by “clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child.” Evans v. Lungrin, 97-0541, p. 13 (La.2/6/98), 708 So.2d 731, 738.
The September 12, 2008 judgment awarding the parties joint custody of the minor children, with Amanda being designated as the domiciliary parent subject to periods of physical custody by John as agreed to by the parties, was signed by the trial court and the parties following a hear *1044 ing. The transcript from the hearing is not in the record on appeal, but the minutes from the hearing indicate that a stipulation as to physical custody was entered into the record. Further, the judgment states that “the parties met and agreed that judgment should be rendered herein as follows,” and it is signed by the parties and the trial judge. Finally, the parties acknowledge in subsequent pleadings filed with the court that they made stipulations pursuant to the July 28, 2008 hearing. Therefore, based on our review of the record before us, we find that the September 12, 2008 judgment is a stipulated judgment.
Because John sought to modify a stipulated judgment, he bore the burden of proving a material change in circumstances affecting the welfare of the children and that the proposed modification would be in the best interest of the children. Richard, 09-0299 at p. 7, 20 So.3d at 1066. Generally, the trial court’s determination of these issues is based heavily on factual findings and as such, we may not set aside the trial court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. Elliott v. Elliott, 05-0181, p. 7 (La.App. 1st Cir.5/11/05), 916 So.2d 221, 226, writ denied, 05-1547 (La.7/12/05), 905 So.2d 293.
In the instant case, the trial court specifically stated in its reasons for judgment that it did not hear “anything to change its’ [sic] feelings concerning the award of custody and, therefore, will maintain the parties [sic] joint custody of the minor children ... with Amanda ... continuing to be designated as the primary domiciliary parent, subject to visitation of John ... [and] will maintain the current visitation of [John] with the minor children as stated in [the September 12, 2008 judgment.]” However, despite this statement, the trial court rendered judgment modifying the September 12, 2008 judgment by removing the restriction limiting John’s exercise of physical custody to the jurisdiction of the court or the State of Louisiana beginning in 2011, and by increasing John’s summertime physical custody to one month in 2011 and to six weeks in every year thereafter. The trial court’s modification of the September 12, 2008 judgment without first finding a material change in circumstances affecting the welfare of the children constitutes legal error. Cedotal, 05-1524 at p. 7, 927 So.2d at 437. Accordingly, we review this matter de novo. See Evans, 97-0541 at pp. 6-7, 708 So.2d at 735.
In requesting modification of the physical custody schedule, John asserts that his move to Minnesota constitutes a change in circumstances. According to John, the distance makes the prior arrangement, wherein he enjoyed custody of the children every other weekend, “unworkable” and that this is sufficient to meet the material change in circumstances requirement. However, John is not only required to show that there is a change in circumstances, but that there is a material change in circumstances affecting the welfare of the children. An interstate move by a non-domiciliary parent does not per se establish such a change. See Major v. Major, 02-2131, p. 8 (La.App. 1st Cir.2/14/03), 849 So.2d 547, 552; LeBlanc v. LeBlanc, 06-1052, p. 7 (La.App. 3rd Cir.2/14/07), 951 So.2d 500, 505, writ denied, 07-0562 (La.4/5/07), 954 So.2d 146; Hensgens v. Hensgens, 94-1200, p. 9 (La.App. 3rd Cir.3/15/95), 653 So.2d 48, 53, writ denied, 95-1488 (La.9/22/95), 660 So.2d 478.
In his post-hearing memorandum, John cites to the supreme court’s decision in Evans as support for his assertion that the move alone is sufficient to establish a ma *1045 terial change in circumstances. In Evans, the parents enjoyed joint custody of their child, with the mother being designated as the domiciliary parent. Upon the mother’s remarriage, she moved with the child from Louisiana to Washington, and the father filed a petition seeking sole custody. The-supreme court found that the father met his burden of proving that there had been a material change in circumstances because the move to Washington made the original custody decree unworkable, and as a result of the move, the child would have less contact with the father, as well as with her maternal and paternal family members. Evans, 97-0541 at p. 18, 708 So.2d at 738.
However, we find John’s reliance on Evans to be misplaced. First, Evans involved an interstate move of a domiciliary parent and the child. Second, the court did not base its determination solely on the fact that the mother moved. Rather, the court also implicitly recognized that the child’s welfare was affected because she was away from virtually all of her family members except for her mother.
In the instant case, John moved to Minnesota, and the children remain in their home in Louisiana with their mother and maternal grandparents and are still close to their paternal grandparents. Even though the children have less contact with their father, absent some evidence in the record that the children’s welfare is affected by John’s move to Minnesota, we find that John has not met his burden in seeking modification of the September 12, 2008 custody judgment. Accordingly, we reverse the trial court’s judgment modifying John’s physical custody.[1]

Child Support

In addition to requesting modification of the physical custody arrangement, John also sought a reduction of his child support obligation. The party seeking modification of a child support award bears the burden of proving that a material change in circumstances has occurred since the time of the previous award and the time of the rule for modification of the award. La. R.S. 9:311(A); see La. C.C. art. 142; see also Barton v. Barton, 05-1190, p. 5 (La.App. 1st Cir.6/9/06), 938 So.2d 779, 781. Louisiana jurisprudence distinguishes between voluntary and involuntary changes in circumstances. An involuntary change in circumstances results from fortuitous events or other circumstances beyond a person’s control, such as loss of one’s position or illness and may support a modification of child support. A voluntary change in circumstances, however, generally does not justify a reduction in the support obligation. When a parent voluntarily terminates his or her employment upon which the original support obligation was based, the child support obligation may be reduced if the obli-gor parent can show that: (1) a change in circumstances has occurred; (2) the voluntary change in circumstances is reasonable and justified; (3) the parent is in good faith and not attempting to avoid his or her alimentary obligation; and (4) the action will not deprive the child of continued reasonable financial support. Strange v. Strange, 42, 318, p. 7 (La.App. 2nd Cir.6/20/07), 960 So.2d 1223, 1228-1229.
The trial court is afforded wide discretion in determining whether the facts of a particular case warrant modification of an obligor parent’s child support obligation. Accordingly, such determinations *1046 will not be disturbed on appeal absent a clear abuse of discretion. See Folse v. Folse, 01-0946, p. 4 (La.App. 1st Cir.5/10/02), 818 So.2d 923, 925; Strange, 42,318 at p. 8, 960 So.2d at 1229.
John filed his motion for reduction in child support approximately three months after the July 28, 2008 hearing that originally set child support, and approximately one month after the September 12, 2008 judgment was signed by the trial court and the parties. In his motion, John asserted that a change in circumstances had occurred since the time of the prior judgment because his income had decreased as a result of his move to Minnesota and the circumstances of his new job, and because the daycare expenses for his children had decreased.
According to the testimony at the hearing, it is undisputed that John quit his job in Louisiana and voluntarily moved to Minnesota. John stated that he moved to Minnesota because his current girlfriend and her family are from Minnesota, and the cost of living there enabled him and his girlfriend to purchase a home, whereas in Louisiana, he could barely afford his apartment rent.[2] Further, while John stated that he moved to Minnesota to get away from Amanda, there was no evidence that he did so to avoid his child support obligation or in bad faith.
John also introduced a copy of his pay stub from his “civilian” job, as well as a copy of a statement indicating his military reserve pay. The pay stub indicates that John makes $17.50 per hour and works 40 hours per week for a total of $1,400.00 gross income per bi-weekly pay period. John stated that he works only fifty weeks per year because he has training with the military reserve for two weeks during the summer. Accordingly, based on this information his monthly income from his civilian job is $2,916.67. Additionally, John introduced evidence establishing that his monthly income from the military reserve is $548.24, not the $700 estimated in the September 12, 2008 judgment. Therefore, his combined monthly gross income was established as being $3,459.91, which is a change from the $3,653.00 attributed to John in calculating the September 12, 2008 child support obligation.
Additionally, evidence was presented at the hearing establishing that the parties’ oldest daughter is attending preschool, with a monthly tuition of $242.00. This amount represents a reduction from the $390.00 John was paying previously for daycare. Accordingly, based on our review of the record, we do not find that the trial court abused its discretion in determining that John met his burden in establishing a material change of circumstances since the September 12, 2008 child support judgment.
Amanda, however, argues that the trial court erred in reducing John’s child support obligation. First, Amanda asserts that John failed to establish his income because he did not introduce a verified income statement into evidence at the hearing. Louisiana Revised Statute 9:315.2(A) provides that in order for a basic child support obligation to be calculated:
Each party shall provide to the court a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings. Spouses of *1047 the parties shall also provide any relevant information with regard to the source of payments of household expenses upon request of the court or the opposing party, provided such request is filed in a reasonable time prior to the hearing. Failure to timely file the request shall not be grounds for a continuance. Suitable documentation of current earnings shall include but not be limited to pay stubs, employer statements, or receipts and expenses if self-employed. The documentation shall include a copy of the party’s most recent federal tax return. A copy of the statement and documentation shall be provided to the other party.
 Documentation is essential to the setting of child support. Drury v. Drury, 01-0877, p. 7 (La.App. 1st Cir.8/21/02), 835 So.2d 533, 539. In cases where the record contains inadequate information and documentation upon which to make a child support determination under the guidelines, a remand to the trial court is necessary. However, if there is sufficient evidence in the record to render a decision in the case, remand in unnecessary, even if some of the required documentation is lacking. Barrios v. Barrios, 95-1390, p. 5 (La.App. 1st Cir.2/23/96), 694 So.2d 290, 293, writ denied, 96-0743 (La.5/3/96), 672 So.2d 691; State Dept. of Social Services v. Reuther, 06-842, pp. 5-6 (La.App. 5th Cir.3/13/07), 952 So.2d 929, 932.
In the instant case, John introduced into evidence a pay stub from his “civilian” employer, as well as a statement from the military regarding his monthly reserve pay. At the conclusion of the hearing, the trial court requested that the parties submit child support worksheets and briefs within fifteen days and gave the parties an additional five days to file response briefs. In conformity with the trial court’s direction, John filed a post-hearing brief, with his child support worksheet attached as an exhibit. The child support worksheet contains figures corresponding to those on the pay stub and military income worksheet that were admitted into evidence at the hearing. Amanda also filed a post-hearing brief, but declined to attach her own worksheet. However, there was no dispute at the hearing that Amanda’s income of $750.00 per month remained unchanged from the September 12, 2008 child support order. Further, Amanda does not otherwise contest the sufficiency of the documentation admitted into evidence at the hearing. Accordingly, we find the trial court was presented with documentation establishing John’s income and Amanda’s argument to the contrary is without merit.
Amanda also argues that the trial court erred in adopting the figures as represented on John’s child support worksheet. According to Amanda, the documentary evidence and testimony introduced at the hearing established that John’s monthly gross income is $5,190.33, not the $3,459.91 represented on John’s worksheet. However, Amanda’s assertion is based on the inclusion of overtime, sick, and on-call earnings being added to John’s “civilian” pay, and an amount for John’s two-week summer training with the reserves being added to the military pay.
At the hearing, the trial court heard evidence as to the overtime pay, wherein John stated he had only been working at this job since October 2008, or approximately eight weeks. Additionally, he stated that the nature of his job required him to be outside and therefore, his overtime is uncertain because of varying weather conditions. Because it is apparent that the trial court did not include the overtime in John’s gross income, we must assume that the trial court determined that the overtime was extraordinary and that it would *1048 be inequitable to include it in John’s gross income. See La. R.S. 9:315(C)(3)(a) and (d)(iii). From our review of the record, we find no abuse of the trial court’s discretion in failing to include John’s overtime pay in his gross income.
Further, with regard to the reserve pay, the statement submitted into evidence only detailed the monthly pay, and did not include a yearly amount or the specific amounts for the two-week summer training. Amanda, therefore, arrives at her figure for military pay by relying solely on John’s testimony wherein he states that he estimates his average annual pay from the military is $8,800.00, which includes eleven and one-half months of drill pay and two weeks of summer training pay. However, because there is no evidence as to the annual reserve pay other than the speculative testimony of John, we find no abuse of discretion in the trial court’s determination of John’s gross income.
In addition to contesting the trial court’s determination of John’s gross income, Amanda also asserts that the trial court should have added the oldest child’s tuition expenses and the younger child’s daycare expenses to the basic child support obligation. In seeking modification, John asserted that there was a change in circumstances due to the decreased cost of the children’s child care. Accordingly, he requested that the monthly amount he was ordered to pay be reduced by $148.00, representing the difference between the prior daycare expense for the older child and her current tuition expense for preschool. John did not, however, assert that he was not responsible for the $242.00 monthly tuition expense for the older child. Accordingly, the trial court clearly erred in failing to add this amount to the basic child support obligation. See La. R.S. 9:315.6(1).
Further, John did not assert that a change had occurred that would warrant eliminating his responsibility for his proportionate share of the younger child’s daycare expense. In fact, he requested that the child care tax credit be awarded to him. John raised the argument that he should not have to pay for the younger child’s daycare for the first time in his post-hearing brief, based on the fact that the mother testified that she only works part-time and that she will also be going back to school fulltime in the spring.
However, La. R.S. 9:315.3 states:
Net child care costs shall be added to the basic child support obligation. The net child care costs are determined by applying the Federal Credit for Child and Dependent Care Expenses provided in Internal Revenue Form 2441 to the total or actual child care costs. [Emphasis added.]
Louisiana Revised Statute 9:315(0(7) defines “net child care costs” as “the reasonable costs of child care incurred by a party due to employment or job search, minus the value of the federal income tax credit for child care.” (Emphasis added.)
In the instant case, Amanda testified that she works part-time for approximately twenty hours a week, meeting with clients in her home, but that she also has to go to the storage facilities to clean them out. She also stated that she cannot take her children with her when she meets with clients or goes to the facilities. Therefore, despite John’s argument to the contrary, the evidence presented at the hearing shows that Amanda incurs child care costs due to her employment. Accordingly, we find that the trial court erred in failing to add the uncontested $390.00 for the younger child’s daycare expenses to the basic child support obligation. However, because the record is devoid of any calculation or evidence as to the federal tax cred *1049 it, we must remand this matter to the trial court for the introduction of evidence from which the trial court can then recalculate the child support award according to La, R.S. 9:315.3.
Finally, John contends that the trial court erred in failing to limit the child support order for payment of 82.2 percent of “uncovered medical expenses” to payment of 82.2 percent of “extraordinary medical expenses.” We agree, Louisiana Revised Statute 9:315(C)(8) defines “ordinary medical expenses” as:
unreimbursed medical expenses less than or equal to two hundred fifty dollars per child per year. Expenses include but are not limited to reasonable and necessary costs for orthodontia, dental treatment, asthma treatment, physical therapy, chronic health problems, and professional counseling or psychiatric therapy for diagnosed mental disorders not covered by medical insurance. The schedule of support in R.S. 9:315.19 incorporates ordinary medical expenses. [Emphasis added,]
Louisiana Revised Statute 9:315.5, however, provides that “[b]y agreement of the parties or order of the court, extraordinary medical expenses incurred on behalf of the child shall be added to the basic child support obligation. Extraordinary medical expenses are unreimbursed medical expenses which exceed two hundred fifty dollars per child per calendar year.”
Therefore, because “uncovered medical expenses,” to the extent they fall within the definition of “ordinary medical expenses,” are already incorporated in the basic child support obligation, the trial court erred in not limiting its award to “extraordinary medical expenses.” Accordingly, we direct the trial court on remand, once it has recalculated the child support award, to amend its judgment to reflect that John is ordered to pay 82.2 percent of the children’s “extraordinary medical expenses.”
CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion. All costs of this appeal are to be borne equally by John P. Bonnecarrere, III and Amanda Ellzey Bonnecarrere.
REVERSED AND REMANDED.
DOWNING, PETTIGREW and PARRO JJ., concur.
CARTER, C.J., concurs in part and dissents in part with reasons.
HUGHES, J., dissents with reasons.
McDONALD, J., dissents.

. Because we find John did not meet his burden in seeking modification of the September 12, 2008 custody judgment, we pretermit discussion of John’s remaining assignments of error as related to physical custody or visitation.

. The testimony indicated that the house that John and his girlfriend live in is actually in the name of his girlfriend. However, John stated that he gave his girlfriend $10,000.00 as a down payment on the home and he would have bought it himself, but he was unable to obtain the necessary documentation from Amanda.