NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CU 0329

SHAUN MICHAEL ESTAY

VERSUS

ERIN FLANNERY ESTAY

DATE OF JUDGMENT: APR 2 7 2022

ON APPEAL FROM THE SEVENTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFOURCHE, STATE OF LOUISIANA
DOCKET NUMBER 117566

HONORABLE F. HUGH LAROSE, JUDGE

* * * * * *

Jerri G. Smitko
Houma, LA

Counsel for Plaintiff/Appellant
Shaun Michael Estay

Rebecca N. Robichaux
Raceland, LA

Counsel for Defendant/Appellant
Erin Flannery Estay

* * * * * *

BEFORE: GUIDRY, HOLDRIDGE, CHUTZ, WOLFE, AND HESTER, JJ.

Guidry, J. Dissents and assigns reasons.

Disposition: AFFIRMED.

Holdridge J. concurs. dissents + assigns reasons

**CHUTZ, J.**

Erin Flannery Estay appeals a trial court judgment, modifying the consent judgment she entered into with her former husband, Shaun Michael Estay, which established the joint custody arrangements of their two minor children. We affirm.

## FACTS AND PROCEDURAL HISTORY

Shaun and Erin were married in 2005, and had two children during their marriage. On May 2, 2011, Shaun filed a petition for divorce in Lafourche Parish, in which he sought, among other things, the joint and shared custody of the parties' children. Erin answered the lawsuit and, in a reconventional demand, also sought joint custody of the children, requesting her designation as the domiciliary parent and reasonable physical custody to Shaun. The parties subsequently entered into a consent judgment on July 13, 2011, agreeing to a joint custody arrangement, with Erin designated as the domiciliary parent. An attached implementation plan set out Shaun's physical custody schedule, allowing him every other weekend from Friday at 5:30 p.m. until Sunday at 6:30 p.m. when Erin worked days and until 5:30 a.m. on Monday when she worked nights. Additionally, when Erin worked nights, Shaun picked up the children from their sitter's at 5:30 p.m. and returned them to the sitter's at 5:30 a.m. the next morning.[1]

Because Erin stopped working nights, on September 27, 2012, Shaun sought a modification of the July 13, 2011 consent judgment. According to Shaun, the time he had been spending with the children amounted to a 60/40 split between the parties, and the schedule was no longer in the best interest of the children. He sought a more equal sharing of physical custody. After a hearing, the parties entered into a new consent judgment, signed by the trial court on March 6, 2013, in which they agreed to maintain joint legal custody with Erin as the primary domiciliary parent but

---

[1] The parties also agreed to share one-half of each major holiday.

2

modified the implementation plan to allow Shaun physical custody of the children every other weekend and Wednesdays after school on the weeks he did not have weekend physical custody.[2]

On September 18, 2015, Shaun again sought joint custody and designation as domiciliary parent.[3] Alternatively, Shaun requested shared physical custody with each parent allowed seven days every other week (seven/seven basis) and that he and Erin be designated "co-domiciliary parent."[4] In support of the modification, Shaun alleged circumstances had changed warranting a modification in that Erin had withheld the children, interfered with his phone conversations with them, and obstructed the exercise of his physical custody for the past 2-3 years. He also averred that Erin had been cohabitating with a man who was not related to her.

The parties entered into another consent judgment that was signed by the trial court on April 11, 2017. They agreed to continue sharing joint custody with Erin named as the domiciliary parent. Shaun's physical custody with the children was every other weekend from Thursdays after school until Monday mornings.[5]

On July 15, 2020, Shaun filed a rule for sole custody, again averring that a change in circumstances warranted a modification of the parties' custody arrangements. Particularly, Shaun alleged that Erin failed to allow the children to speak with him during her physical custody periods; he has been happily married for

---

[2] Specifically, Shaun had physical custody of the children from after school/daycare pick-up on Fridays until Monday mornings, and when there was no school on Mondays, the children remained with him until 6:00 p.m. on Monday. On Wednesdays that he exercised physical custody, the children were with Shaun from after school until 8:00 p.m. During the summer, the parties alternated every other seven-day period and continued to split time on all major holidays.

[3] Shaun filed the rule to modify custody in Terrebonne Parish despite earlier proceedings having been conducted in Lafourche Parish. In response to Shaun's rule, Erin filed exceptions raising the objections of lis pendens and improper venue, which were granted by the trial court. The matter was transferred to Lafourche Parish.

[4] We note that Shaun's request of co-domiciliary parent designation was without merit since the court can only designate a single domiciliary parent. See *Hodges v. Hodges*, 2015-0585 (La. 11/23/15), 181 So.3d 700, 706.

[5] When Mondays were not school days, Shaun's physical custody continued until 6:00 p.m. that Monday. The parties continued to share equal time on all major holidays.

3

over eight years in a stable, loving relationship; the children wanted to live with him; Erin repeatedly left the children alone at home; Erin was unable to provide a suitable home environment because she had several different men (most of whom were married) move in the house and live with her and the minor children; and Erin placed the children in unsafe situations by bringing them out of town with her and her married boyfriends. Shaun also averred that he had such grave concern for the safety and well-being of his minor children that he had contacted the Louisiana Department of Child and Family Services and had applied for a protective order.

On July 17, 2020, Shaun filed an ex parte petition for protection from abuse on behalf of the children based on allegations that Erin walked around the house in the nude in the presence of the minor children. Additionally, he maintained, among other things, that the children had seen sexually explicit videos and pictures of Erin on her cell phone.

A hearing on Shaun's rule for custody was held on August 21, 2020. Because the parties were unable to finish presenting their evidence, the trial court set resumption of the matter for September 29, 2020. An interim order was signed, directing that the parties exercise custody on a seven/seven schedule until the hearing, and requiring that the parties and the children submit to an evaluation by a counselor. Additionally, Shaun voluntarily waived the request for protection from abuse and the trial court dismissed the claim.

Following the presentation of additional witness testimony and documentary evidence on September 29, 2020, the trial court issued a judgment, ordering the parties to continue joint custody but changing designation of the domiciliary parent to Shaun. The judgment awarded Erin physical custody of the children every other weekend from Friday at 5:00 p.m. through Sunday at 5:00 p.m.[6] Erin appeals.

---

[6] The judgment also ordered that during summer months, the parties share physical custody on a seven/seven basis and set forth a holiday schedule.

# DISCUSSION

Every child custody case must be viewed in light of its own peculiar set of facts and circumstances. *Elliott v. Elliott*, 2010-0755 (La. App. 1st Cir. 9/10/10), 49 So.3d 407, 411, writ denied, 2010-2260 (La. 10/27/10), 48 So.3d 1088. The primary consideration in any determination of child custody is the best interest of the child. See La. C.C. art. 131; *Bonnecarrere v. Bonnecarrere*, 2011-0061 (La. App. 1st Cir. 7/1/11), 69 So.3d 1225, 1232.

La. C.C. art. 134A[7] provides a non-exclusive list of factors that the trial court shall consider, along with all other relevant factors for the determination of the best interest of the child, and the determination as to the weight given each factor is left to the discretion of the trial court. The illustrative nature of the listing of factors contained in La. C.C. art. 134 gives the court freedom to consider additional factors; and, in general, the court should consider the totality of the facts and circumstances

---

[7] La. C.C. art. 134A provides, that the court shall consider "all relevant factors in determining the best interest of the child," which include:

(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.
(2) The love, affection, and other emotional ties between each party and the child.
(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(7) The moral fitness of each party, insofar as it affects the welfare of the child.
(8) The history of substance abuse, violence, or criminal activity of any party.
(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.
(10) The home, school, and community history of the child.
(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.
(13) The distance between the respective residences of the parties.
(14) The responsibility for the care and rearing of the child previously exercised by each party.

of the individual case. La. C.C. art. 134, 1993 Revision Comment (d). The consideration of all relevant factors under La. C.C. art. 134 should be followed in actions to change custody, as well as in those to fix custody initially. La. C.C. art. 134, 1993 Revision Comment (d). The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. *Underwood v. Underwood*, 2021-0277 (La. App. 1st Cir. 10/21/21), 332 So.3d 128, 139-40.

If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award. La. C.C. art. 132. In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly. La. C.C. art. 132.

The burden of proof needed to change a custody plan ordered pursuant to a considered decree is different from that required for modification of a non-considered decree. *Elliott*, 49 So.3d at 412. A "considered decree" is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of the children. *Elliott*, 49 So.3d at 412. By contrast, a "non-considered decree" or uncontested decree is one in which no evidence is presented as to the fitness of the parents. See *Elliott*, 49 So.3d at 412.

Once a considered decree of permanent custody has been rendered by a court, the proponent of the modification bears the heavy burden of proving that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely caused by a change of environment is substantially outweighed by its advantages to the child. *Bergeron v. Bergeron*, 492 So.2d 1193, 1200 (La. 1986).

However, where the underlying custody decree is a non-considered decree or consent judgment, the heavy burden of proof rule enunciated in *Bergeron* is inapplicable. *Elliott*, 49 So.3d at 412-13. Rather, a party seeking a modification of a consent judgment must prove that: (1) there has been a change in circumstances materially affecting the welfare of the child since the original (or previous) custody decree was entered; and (2) the proposed modification is in the best interest of the child. *Elliott*, 49 So.3d at 413.

Here, it is undisputed that the underlying custody decree was a consent judgment. As such, in order to seek modification of that judgment, Shaun had to prove a change in circumstances materially affecting the welfare of the children and that the proposed modification is in the best interest of the children.

Generally, the trial court's determination of these issues is based heavily on factual findings, and, as such, may not be set aside in the absence of manifest error or unless clearly wrong. *Bonnecarrere v. Bonnecarrere*, 2009-1647 (La. App. 1st Cir. 4/14/10), 37 So.3d 1038, 1044, writ denied, 2010-1639 (La. 8/11/10), 42 So.3d 381. 37 So.3d at 1044. But when a trial court fails to determine whether there has been a change in circumstances materially affecting the welfare of the children, a legal error occurs, warranting a de novo review of the evidence. See *Cedotal*, 2005-1524 (La. App. 1st Cir. 11/4/05), 927 So. 2d 433, 437; *Bonnecarrere*, 37 So.3d at 1044.

On appeal, Erin maintains that the trial court applied an incorrect burden of proof that interdicted its factual findings. Erin points to a statement at the beginning of trial wherein the trial judge indicated that its role today is "simply to find the best interest of the children." She also suggests that the lack of an express finding of a change in circumstances materially affecting the welfare of the children either orally or in the written reasons for judgment similarly demonstrates that the trial court applied the wrong burden of proof.

7

Initially, we note that although Erin has correctly recalled the trial judge's expressed concern was for the children's best interest and that he failed to make an explicit finding that a change in circumstances materially affecting the welfare of the children had occurred, a trial court's judgment is presumptively correct and it is the appellant's duty to point out any error in the judgment appealed. See *Frandria v. Holden*, 2020-0410 (La. App. 1st Cir. 12/30/20), 319 So.3d 332, 338 n.4, writ not considered, 2021-00692 (La. 9/27/21), 324 So.3d 102. The record shows that at the commencement of the hearing, the trial judge acknowledged the applicability of the two prongs required to modify a custody decree, and expressly noted there were "new allegation[s]" under consideration. The trial court provided no other insight into its reasoning aside from the brief written reasons issued along with its judgment, over a month after the conclusion of the review hearing. Therefore, nothing in this record shows that the trial court used the wrong burden.[8]

Since we review judgments, not the reasons for a judgment, see *Beem v. Beem*, 2020-0897 (La. App. 1st Cir. 4/20/21), 324 So.3d 682, 686, and given the presumption of correctness of a trial court's determination, in the case presently before us since the record fails to demonstrate that the trial court actually applied an incorrect burden of proof, we apply the manifest error/clearly wrong standard of review to ascertain whether there is support for an implicit factual finding that a

---

[8] This matter is distinguishable from the legal errors committed in *Cedotal*, 927 So.2d at 436-37 and *Bonnecarrere*, 37 So.3d at 1044. In *Cedotal*, during the hearing, the trial court stated that movant bore the burden of proving a change in custody was in the child's best interest. *Id.* Finding the failure to first require movant to prove a change of circumstance materially affecting the child constituted legal error, the *Cedotal* court noted the trial court's approach had effectively precluded both parents from the opportunity to provide a complete presentation of the evidence. Indeed, given the lack of evidence of a change in circumstances materially affecting the child, the *Cedotal* court could not make a de novo determination and had to remand the matter to the trial court. In *Bonnecarrere*, the trial court stated it did not hear "anything to change [its] feelings concerning the award of custody and, therefore, will maintain the parties['] joint custody of the minor children ... with [the mother] ... continuing to be designated as the primary domiciliary parent, subject to visitation of [the father] ... [and] will maintain the current visitation of [the father] with the minor children as stated in [the prior consent judgment]." But it signed a judgment that modified the physical custody schedule. The appellate court determined it was legal error for the trial court to do so without first finding a material change in circumstances affecting the welfare of the children. *Id.*

change of circumstances materially affecting the children occurred since the last consent judgment.

Further, the trial court is vested with broad discretion in deciding child custody cases. Because of the trial court's better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate court functions, great deference is accorded to the decision of the trial court. Thus, the trial court's determination regarding child custody should not be disturbed absent a clear abuse of discretion. *Martello v. Martello*, 2006-0594 (La. App. 1st Cir. 3/23/07), 960 So.2d 186, 191-92.

The record shows, and Erin admitted, that she walked around in the nude while the children were present in the house but claimed the children were either in other rooms with the doors closed or were otherwise occupied. Once Shaun became aware of this, he filed the rule seeking sole custody which prompted this matter. Although Erin indicated that she only was nude in the boys' presence before bathing, while walking from one area of the house to another, or when disciplining them as she bathed but covering herself up in the process, the record contains evidence to support a finding that Erin was nude in the boys' presence much more frequently than she described, and that it was not merely on inadvertent occasions. Evidence also supports a finding that Erin's frequent nudity caused the boys to be "uncomfortable" to the point of asking her to put clothes on and adapting their behavior by removing themselves to other areas of the house to avoid seeing her in the nude. Erin's nudity in front of the boys occurred for at least one year and perhaps as long as seven years, and one of the reasons the boys preferred Shaun's house was because no one walked around nude there.

Additionally, the record contains evidence supporting findings that: Erin's phone had a passcode that her children knew but there was no specific security feature to keep the children from accessing the folder of explicit pictures; and the

boys saw photos of Erin in the nude, both by herself and with her former boyfriend, as well as a sexually explicit video of Erin with her former boyfriend while they were both naked. Evidence also showed that the older boy attempted to shield his younger brother by encouraging him not to look "too deep" into Erin's phone to avoid seeing additional nude photos and videos of her. And it is undisputed that one of the boys asked a female student at his school if she had ever taken a nude photo of herself.

In addition to Erin's nudity in the boys' presence and the explicit photos and videos on her phone, the record contains evidence that Erin had a former boyfriend of about two years, who was a married man at the time of her relationship with him.[9] Findings that the children knew that he "had a wife already" and disapproved of the relationship because the former boyfriend was already married are supported by the evidence. Erin's married boyfriend was frequently at Erin's house when the boys were there, and Erin admitted that she took the children with her to see her boyfriend at the home of the friend with whom the boyfriend was living during the time he was not with her. By the time of the hearing, Erin and her former married boyfriend apparently had ended their relationship.

Lastly, the record contains the report of Betsy St.Pierre, Ph.D., LPC-S, a licensed professional counselor who was appointed by the trial court to perform a custody evaluation of the children. After conducting interviews with the parents (jointly and individually) as well as the father's wife, the children, and a counselor who had seen the children 32 times, Dr. St.Pierre recommended that the parties have shared custody, with Shaun designated as the domiciliary parent. She also suggested that Erin be awarded physical custody of the boys every other weekend and one night during the school week.

---

[9] According to Erin, her boyfriend had filed a petition for divorce and was no longer living with his wife.

Mindful that the trial court already had an understanding of the dynamics of the parties' relationship prior to the commencement of the hearing, once the evidence of Erin's nudity in the children's presence and in photos and videos was brought to light, it is apparent that from the trial court's perspective, this new information was sufficient to constitute a change of circumstances that materially affected the preadolescent children. The boys' discomfort when their mother was nude in their presence, adjustment of their behavior to avoid Erin's presence when she was nude, and their affinity for Shaun's house at which they were not exposed to nudity are findings supported by the evidence that show the children were materially affected by their mother's conduct. A finding that one boy had solicited a nude photo of a female classmate, which is supported by the evidence, demonstrates that the sexually explicit photos and videos of Erin have already materially affected him. In light of the boys' impressionable ages, a trier of fact could correctly determine that their mother's lifestyle created a vulnerability that was not in the children's best interest. And although the trial court disregarded the children's stated preference of spending time with each parent on a seven/seven basis and did not expressly analyze each of the La. C.C. art. 134 factors, we cannot conclude the trial court abused it great discretion in heavily weighing the moral fitness of each party insofar as it affected the welfare of the children so as to modify the parties' joint custody in the manner it did.[10] See *Underwood*, 128 So.3d at 140.

---

[10] Because the trial court continued the joint custody of the children, only modifying the physical custody schedule and the designation of the domiciliary parent, a discussion of Erin's assertion that the trial court applied an incorrect burden of proof in Shaun's request for sole custody is unnecessary and, therefore, pretermitted.

## DECREE

For these reasons, the trial court's judgment is affirmed.[11] Appeal costs are assessed against Erin Flannery Estay.

**AFFIRMED.**

---

[11] To the extent a legal error interdicted the factfinding process, on de novo review, based on the evidence undertaken in our application of the manifest error/clearly wrong standard of review, we find a change of circumstances materially affecting the children occurred and that a modification of the parties' joint custody in the manner that the trial court adjusted it is in the best interest of the children. Accordingly, the trial court's judgment is alternatively affirmed on this basis, with Shaun designated as the domiciliary parent and the physical custody schedule adjusted so that the children spent more time at their father's house in accordance with the child custody evaluator's recommendation while declining to award week night visits with their mother as Dr. St.Pierre recommended.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 CU 0329

ERIN FLANNERY ESTAY

VERSUS

SHAUN MICHAEL ESTAY

**GUIDRY, J., dissents and assigns reasons.**

**GUIDRY, J., dissenting.**

I respectfully disagree with the majority opinion affirming the trial court's judgment. In the instant case, it is undisputed that the underlying custody decree was a consent judgment. As such, in order to seek modification of that judgment, Shaun had to prove a change in circumstances materially affecting the welfare of the children and that the proposed modification is in the best interest of the children.[1] However, with regard to the burden of proof, the trial court stated at the beginning of trial that "[its] role today is simply to find the best interest of the children." Additionally, the trial court failed to mention or articulate any finding of a change in circumstances materially affecting the welfare of the children either in court or in its written reasons for judgment. A trial court's failure to determine whether a change in circumstances materially affecting the welfare of the children has occurred constitutes legal error, and this court, if the record is otherwise complete, must render judgment on the record by applying the correct law and determining the essential

---

[1] Shaun filed his pleading seeking sole custody of the minor children, which requires a showing by clear and convincing evidence that sole custody is in the best interest of the children. La. C.C. art. 132. However, because the trial court judgment continued the joint custody arrangement between the parties and only modified the physical custody schedule and domiciliary parent status, I would pretermit discussion of any argument raised by Erin that the trial court erred by applying an incorrect burden of proof to Shaun in seeking sole custody.

1

facts *de novo.* Cedotal, 05-1524 at pp. 7-8, 927 So. 2d at 437; see also Bonnecarrere, 09-1647 at p. 7, 37 So. 3d at 1044.

Erin testified at trial and did not dispute that she walked around her house naked when the minor children, who at the time of trial were eleven and twelve-year old males, were home. Erin acknowledged that she also walked around the house naked when she had physical custody of the boys and her boyfriend was in the home. Erin stated that she only did this before bathing and she was walking from one area of the house to another. Erin further acknowledged that she would call the boys into the bathroom while she was bathing to discipline them when they were fighting, although she stated that she tried to cover up on such occasions. Erin stated that she discontinued this behavior a few months prior to trial.

In their interview with the court appointed custody evaluator, Ms. St. Pierre, the children stated that Erin has been walking around the house naked for years, but that she had stopped in the past few months. The children disputed that Erin only does so while walking from one area of the house to another prior to bathing, stating that she has also stopped and sat on the sofa in the living room while naked and watched television. The children also acknowledged that this behavior occurred when Erin's boyfriend was in the house. Both children stated that their mom walking around naked makes them uncomfortable. However, while both children indicated that this behavior made them uncomfortable, they both still like being at Erin's house and would like to continue the 7 and 7 arrangement as implemented in the trial court's interim order. Furthermore, Ms. St. Pierre stated in her report that upon observing the children with Erin, they were very comfortable with her and were excited and cooperative in playing board games with her. Ms. St. Pierre stated that she did not notice any anxiety, and neither child had any observable deficits in social, cognitive, or emotional development.

2

Accordingly, based upon a *de novo* review of the record and the evidence presented in this case, while I do not condone this type of behavior by a mother around her adolescent, male children and find that it clearly demonstrates a lapse in good judgment, I would find that under the facts of this case, where the mother has made an effort to correct her behavior and there is a lack of evidence showing that the behavior has materially affected the welfare of the children, Shaun has failed to meet his initial burden in seeking modification of the custody award on this basis.

Additionally, I find that Shaun has also failed to present evidence otherwise establishing that there has been a change in circumstances that materially affects the welfare of the children. Shaun also alleged that the children had seen videos and pictures of Erin naked on her cell phone. Erin acknowledged that she became aware that the children had seen photos on her phone after Shaun had notified the police. She stated that these photos and videos were located in a file marked "hidden," but they were not password protected. Erin acknowledged that the children knew the passcode to her phone and used her phone. The minor children stated that they saw one or two pictures and a video while looking on Erin's phone. However, in their testimony before the court and in their interview with Ms. St. Pierre, the children stated that after they saw these pictures they stopped looking around on her phone. There was no testimony wherein the children, Ms. St. Pierre, or any other person stated that seeing these pictures affected their welfare, affected their relationship with Erin, or had any adverse effect on them.

Shaun also alleged that Erin had relationships with married men, who stayed in the home with the minor children, and that she has brought the children out of town with these men. Erin acknowledged that she had been in a relationship for two years with a married man, and that he stayed in the home, but she stated that the relationship ended months prior to trial. Erin stated that she had been very open about her relationship with this man, that she had brought him to the children's

3

football games where Shaun was also present, and that Shaun had never had a problem with him in the past. Erin also stated that she had brought the children with her and the boyfriend on occasion to a friend's house in Watson. However, Erin stated that she never told the children that the boyfriend was married. The children stated that the boyfriend was the only male that stayed in the house while they were there. Accordingly, other than speculation by Shaun that this relationship endangered the children because of what might happen if the boyfriend's wife found out, there is no evidence in the record that this prior relationship, which has ended, materially affects the welfare of the children.

Shaun further alleged that Erin prevented the children from speaking with him during her periods of physical custody. Through testimony at trial and evidence admitted at trial, it was revealed that the children were not prohibited from speaking with Shaun, although one child did state that the other child was told one time he could not speak to Shaun. When confronted with phone records showing the call history between himself and the children, Shaun stated that the problem was that he was not allowed to speak freely with his children because Erin insisted that the children be by her when they spoke with him. However, the record is devoid of any evidence demonstrating that the welfare of the children was materially affected by the fact that Erin was next to the children during their phone conversations with Shaun.

Finally, Shaun alleged that Erin leaves the children at home alone. However, the testimony of multiple witnesses, including neighbors, the maternal grandmother, sitters, and the children indicate that on days when Erin had to go to work before the children left for school, a neighbor/sitter would come over to the house and get the children up and make sure they got dressed for school. Shaun even acknowledged that he used the same sitters on days he had custody of the children because it was convenient. Erin and the children stated that if she wasn't at home when the oldest

4

child arrived home from school, he would be at home alone until she got there. However, Erin and the youngest child acknowledged that the youngest child was never left at home alone, and she was home by the time he got off of the bus. Additionally, the testimony of multiple witnesses indicates that Erin, a sitter, or the maternal grandmother assisted the children when they were attending school "virtually" while at home due to COVID. Accordingly, from my review of the record, while the evidence demonstrates that Erin may not always be at home, the children are not routinely left alone but rather, are in the care of a neighbor, a sitter or the maternal grandmother if Erin is not there.

Therefore, after a thorough review of the record, I would find that Shaun has failed to meet his burden of establishing a change in circumstances materially affecting the welfare of the children so as to support a modification of custody.

ERIN FLANNERY ESTAY

VERSUS

SHAUN MICHAEL ESTAY

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CU 0329



**HOLDRIDGE, J., dissents.**

I concur in part and dissent in part. I concur in that portion of the opinion that affirms the trial court's judgment ordering the parties to continue joint custody and changing the designated domiciliary parent to the father. However, I dissent from that portion of the opinion that affirms the judgment insofar as it limits Ms. Estay's physical custody of the children to every other weekend. The trial court's judgment ordered the parties to share physical custody on an alternating weekly basis during summer months. Based on the facts of this case, if such an arrangement is appropriate, i.e., not harmful to the children and in the best interest of the children for the summer months, it should likewise be appropriate for the remainder of the year. Accordingly, I would remand this matter to the trial court, directing it to comply with La. R.S. 9:335(A)(2)(A) and (b) in establishing the provisions of the joint custody implementation plan that address the sharing of physical custody. La. R.S. 9:335(A)(2)(b) provides, "To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared **equally**." (Emphasis added.)